## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISMAHAN ABDULAHI, ISABELLA ANGELONE, ZEFAN ARAYA, MAKAYLA BAKER, CALLIE BALLARD, SARA BARLOW, YAMILA CARDENAS, KARA CARTER, MICHELLE CHERRY, CHARITY CHRISTENSEN, MARISA COHEN, JULIE CORCORAN, COURTNEY DEIST, JASMYN DOBE, KELSEY DUBORD, KRISTEN DUVALL, VALERIE GIRALDO, SONYA HANISCH, TARA HILL, LAUREN HOUSE, MICHELA KENNING, BONNIE KOLBER, JENNY KRUMROY, JORDAN LAW, STACY LAZARA, SAMANTHA LEE, NOOR MAHMOOD, ERIKA MARTINEZ, MARIYA MELAMUD, YASMINA MENDEZ, ALLYX MITCHEL, SHERRY MORGAN, DANNEIL MUSSER, KIM PACE, BROOKE PANGLE, KASSANDRA PEREZ, RENAE REEVES, BREANNA ROMAINE-GUILIANO, MINDIE ROUSH, JAMELY SANCHEZ, KIMBERLY SMITH, SAMANTHA STEWART, SAMANTHA SUTTON, TRACY SWEENEY, KATHLEEN SWILLING, SHALAYNA TALAVERA, ALEXIS TAPLIN, MAYLAT TEMASGANE, MEGAN WALSTED, STEPHANIE WILLIAMS, and YESSICA ZUNO individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> DEVA CONCEPTS, LLC, d/b/a DevaCurl <br><br> Defendant. | **CASE NO.** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs bring this Class Action Complaint against Defendant Deva Concepts, LLC, ("Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendant's "DevaCurl No-Poo Original" non-lathering conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker, and DevaCurl Ultra Defining Gel (collectively "the Products") which are used for personal cosmetic purposes. Plaintiffs seek damages and equitable remedies for themselves, and for the Class and Subclasses (defined below).

2.      Defendant formulates, manufactures, advertises, and sells the Products to consumers throughout the United States, including in the State of New York.

3.      In 2002, Defendant rose to prominence when it created and developed the formula for the DevaCurl No-Poo Original, i.e., the No-Poo Product, which is marketed as containing no sulfate, and is also marketed as an "innovative new haircare category" and a "game-changing alternative to traditional shampoo."[1]

---

[1] https://www.devacurl.com/us/curl-101/our-story

2

4.      Defendant further markets the No-Poo Product as a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and that is used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[2]

5.      One of the founders of DevaCurl was quoted as saying that the No-Poo Product "allows your scalp to regulate, and your hair to become more what nature intended."[3]

6.      Consumers purchase Defendant's No-Poo Product because it does not contain sulfate, and because of Defendant's marketing, which claims that the No-Poo Product "allows your scalp to regulate, and your hair to become more of what nature intended."[4]

7.      Consumers seek out the No-Poo Product because it provides maximum frizz prevention and slows color fading.[5]

8.      Defendant and publications have suggested that those with curly hair should not use shampoo because it dries out peoples' curls when their hair is being washed.[6]

9.       The No-Poo Product was touted as the answer to this age-old issue and does not contain lather, or any of the sulfates found in shampoos that dry out curls.[7]

10.     DevaCurl's No-Poo Product has been deemed (by Defendant) the shampoo that still moisturizes and is made with a peppermint scent.[8]

---

[2] *Id.*
[3] https://www.nytimes.com/2010/09/30/fashion/30Skin.html (last visited January 13, 2020).
[4] *Id.*
[5] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ, (last visited January 13, 2020).
[6] http://nymag.com/strategist/article/best-curly-hair-products-review-devachan-no-poo-conditioner.html. (last visited January 13, 2020).
[7] *Id.*
[8] *Id.*

11.    Many have used the No-Poo Product as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.[9]

12.    Therefore, consumers seeking a complete alternative to traditional shampoo end up purchasing the No-Poo Product.

13.    Since the creation of the No-Poo Product, Defendant has formulated, manufactured, marketed and sold many accompanying products for the same purposes to consumers in this District and across the country.

14.    Consumers pay a premium over the cost of traditional retail and salon shampoos for Defendant's Products, based upon the representations above.

15.    However, despite the "DevaCurl phenomenon" that has caused many curly haired consumers across the United States to purchase and use the Products, use of the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding during normal use by consumers.

16.    Indeed, thousands of consumers have reported their hair failing out shortly after or during actual use of the Products.

17.    Defendant provides no warning about these consequences, and in fact makes numerous assertions about the gentle and beneficial nature of the Products. For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[10] With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat

---

[9] https://www.glamour.com/gallery/best-curly-hair-products, (last visited January 13, 2020).
[10] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930

as often as needed!"[11] These statements and others were and are false, deceptive, and misleading and have harmed Plaintiffs and the Class.

18.     Disturbingly, Defendant appears to be aware of the issues with its Products but conceals and fails to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[12]

19.     Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[13]

20.     Defendant unambiguously has knowledge of the hair loss and scalp irritation caused by the Products. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation beginning in February 2018. There have been hundreds of complaints posted on social media sites like Facebook. Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[14] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[15]

---

[11] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898
[12] https://www.devacurl.com/blog/hair-shedding-101/
[13] *Id.*
[14] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/
[15] https://www.devacurl.com/us/deva-community-statement

21.    Defendant has even created the "Curl Council" to deal with the consumer backlash as a result of the issues alleged herein. However, the "Curl Council" is nothing more than 'window dressing' to address the fallout from bad "PR".[16]

22.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

23.    Had Plaintiffs and other Class members known that Defendant's Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

24.    Plaintiffs and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

25.    Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

27.    This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United

---

[16] https://www.refinery29.com/en-us/2020/02/9363703/devacurl-hair-loss-damage-controversy.

States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

28.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and at least one Plaintiff resides in this District.

## **PARTIES**

29.    Plaintiff Ismahan Abdulahi is a resident of Auburn, Maine who purchased and used DevaCurl Products within the relevant time period. Plaintiff Abdulahi experienced scalp irritation and hair loss after using the Products.

30.    Plaintiff Isabella Angelone is a resident of Chalfont, Pennsylvania who purchased and used DevaCurl Products within the relevant time period. Plaintiff Angelone experienced scalp irritation and hair loss after using the Products.

31.    Plaintiff Zefan Araya is a resident of Washington, District of Columbia who purchased and used DevaCurl Products within the relevant time period. Plaintiff Araya experienced scalp irritation and hair loss after using the Products.

32.    Plaintiff Makayla Baker is a resident of Flagstaff, Arizona who purchased and used DevaCurl Products within the relevant time period. Plaintiff Baker experienced scalp irritation and hair loss after using the Products.

33.    Plaintiff Callie Ballard is a resident of Cheyenne, Wyoming who purchased and used DevaCurl Products within the relevant time period. Plaintiff Ballard experienced hair loss after using the Products.

34.     Plaintiff Sara Barlow is a resident of Edgerton, Wisconsin who purchased and used DevaCurl Products within the relevant time period. Plaintiff Barlow experienced scalp irritation and hair loss after using the Products.

35.     Plaintiff Yamila Cardenas is a resident of Fort Belvoir, Virginia who purchased and used DevaCurl Products within the relevant time period. Plaintiff Cardenas experienced scalp irritation and hair loss after using the Products.

36.     Plaintiff Kara Carter is a resident of Trussville, Alabama who purchased and used DevaCurl Products within the relevant time period. Plaintiff Carter experienced scalp irritation and hair loss after using the Products.

37.     Plaintiff Michelle Cherry is a resident of Las Vegas, Nevada who purchased and used DevaCurl Products within the relevant time period. Plaintiff Cherry experienced scalp irritation and hair loss after using the Products.

38.     Plaintiff Charity Christensen is a resident of Keaau, Hawaii who purchased and used DevaCurl Products within the relevant time period. Plaintiff Christensen experienced scalp irritation and hair loss after using the Products.

39.     Plaintiff Marisa Cohen is a resident of Los Angeles, California who purchased and used DevaCurl Products within the relevant time period. Plaintiff Cohen experienced scalp irritation and hair loss after using the Products.

40.     Plaintiff Julie Corcoran is a resident of Mannington, West Virginia who purchased and used DevaCurl Products within the relevant time period. Plaintiff Corcoran experienced scalp irritation and hair loss after using the Products.

41.     Plaintiff Courtney Deist is a resident of Manhattan, Kansas who purchased and used DevaCurl Products within the relevant time period. Plaintiff Deist experienced scalp irritation and hair loss after using the Products.

42.     Plaintiff Jasmyn Dobe is a resident of Manchester, New Hampshire who purchased and used DevaCurl Products within the relevant time period. Plaintiff Dobe experienced scalp irritation and hair loss after using the Products.

43.     Plaintiff Kelsey Dubord is a resident of Escanaba, Michigan who purchased and used DevaCurl Products within the relevant time period. Plaintiff Dubord experienced scalp irritation and hair loss after using the Products.

44.     Plaintiff Kristen Duvall is a resident of Baltimore, Maryland who purchased and used DevaCurl Products within the relevant time period. Plaintiff Duvall experienced scalp irritation and hair loss after using the Products.

45.     Plaintiff Valerie Giraldo is a resident of Secaucus, New Jersey who purchased and used DevaCurl Products within the relevant time period. Plaintiff Giraldo experienced scalp irritation and hair loss after using the Products.

46.     Plaintiff Sonya Hanisch is a resident of Le Mars, Iowa who purchased and used DevaCurl Products within the relevant time period. Plaintiff Hanisch experienced scalp irritation and hair loss after using the Products.

47.     Plaintiff Tara Hill is a resident of Searcy, Arkansas who purchased and used DevaCurl Products within the relevant time period. Plaintiff Hill experienced scalp irritation and hair loss after using the Products.

48.     Plaintiff Lauren House is a resident of Columbus, Ohio who purchased and used DevaCurl Products within the relevant time period. Plaintiff House experienced scalp irritation and hair loss after using the Products.

49.     Plaintiff Michela Kenning is a resident of Forest Grove, Oregon who purchased and used DevaCurl Products within the relevant time period. Plaintiff Kenning experienced scalp irritation and hair loss after using the Products.

50.     Plaintiff Bonnie Kolber is a resident of Irasburg, Vermont who purchased and used DevaCurl Products within the relevant time period. Plaintiff Kolber experienced hair loss after using the Products.

51.     Plaintiff Jenny Krumroy is a resident of Greensboro, North Carolina who purchased and used DevaCurl Products within the relevant time period. Plaintiff Krumroy experienced scalp irritation and hair loss after using the Products.

52.     Plaintiff Jordan Law is a resident of Hubbardston, Massachusetts who purchased and used DevaCurl Products within the relevant time period. Plaintiff Law experienced scalp irritation and hair loss after using the Products.

53.     Plaintiff Stacy Lazara is a resident of Stratford, Connecticut who purchased and used DevaCurl Products within the relevant time period. Plaintiff Lazara experienced scalp irritation and hair loss after using the Products.

54.     Plaintiff Samantha Lee is a resident of Missoula, Montana who purchased and used DevaCurl Products within the relevant time period. Plaintiff Lee experienced scalp irritation and hair loss after using the Products.

55.     Plaintiff Noor Mahmood is a resident of Kenner, Louisiana who purchased and used DevaCurl Products within the relevant time period. Plaintiff Mahmood experienced scalp irritation and hair loss after using the Products.

56.     Plaintiff Erika Martinez is a resident of Round Lake, Illinois who purchased and used DevaCurl Products within the relevant time period. Plaintiff Martinez experienced scalp irritation and hair loss after using the Products.

57.     Plaintiff Mariya Melamud is a resident of Aurora, Colorado who purchased and used DevaCurl Products within the relevant time period. Plaintiff Melamud experienced scalp irritation and hair loss after using the Products.

58.     Plaintiff Yasmina Mendez is a resident of Miami, Florida who purchased and used DevaCurl Products within the relevant time period. Plaintiff Mendez experienced scalp irritation and hair loss after using the Products.

59.     Plaintiff Allyx Mitchel is a resident of Kearney, Nebraska who purchased and used DevaCurl Products within the relevant time period. Plaintiff Mitchel experienced scalp irritation and hair loss after using the Products.

60.     Plaintiff Sherry Morgan is a resident of Fort Worth, Texas who purchased and used DevaCurl Products within the relevant time period. Plaintiff Morgan experienced scalp irritation and hair loss after using the Products.

61.     Plaintiff Danneil Musser is a resident of Brandon, South Dakota who purchased and used DevaCurl Products within the relevant time period. Plaintiff Musser experienced scalp irritation and hair loss after using the Products.

62.     Plaintiff Kim Pace is a resident of Carthage, Mississippi who purchased and used DevaCurl Products within the relevant time period. Plaintiff Pace experienced scalp irritation and hair loss after using the Products.

63.     Plaintiff Brooke Pangle is a resident of West Fargo, North Dakota who purchased and used DevaCurl Products within the relevant time period. Plaintiff Pangle experienced scalp irritation and hair loss after using the Products.

64.     Plaintiff Kassandra Perez is a resident of Claymont, Delaware who purchased and used DevaCurl Products within the relevant time period. Plaintiff Perez experienced scalp irritation after using the Products.

65.     Plaintiff Renae Reeves is a resident of Spanaway, Washington who purchased and used DevaCurl Products within the relevant time period. Plaintiff Reeves experienced scalp irritation and hair loss after using the Products.

66.     Plaintiff Breanna Romaine-Guiliano is a resident of Astoria, New York who purchased and used DevaCurl Products within the relevant time period. Plaintiff Romaine-Guiliano experienced scalp irritation and hair loss after using the Products.

67.     Plaintiff Mindie Roush is a resident of Hallsville, Missouri who purchased and used DevaCurl Products within the relevant time period. Plaintiff Roush experienced scalp irritation and hair loss after using the Products.

68.     Plaintiff Jamely Sanchez is a resident of Providence, Rhode Island who purchased and used DevaCurl Products within the relevant time period. Plaintiff Sanchez experienced scalp irritation and hair loss after using the Products.

69.     Plaintiff Kimberly Smith is a resident of Rigby, Idaho who purchased and used DevaCurl Products within the relevant time period. Plaintiff Smith experienced scalp irritation and hair loss after using the Products.

70.     Plaintiff Samantha Stewart is a resident of Covington, Kentucky who purchased and used DevaCurl Products within the relevant time period. Plaintiff Stewart experienced hair loss after using the Products.

71.     Plaintiff Samantha Sutton is a resident of Stigler, Oklahoma who purchased and used DevaCurl Products within the relevant time period. Plaintiff Sutton experienced scalp irritation and hair loss after using the Products.

72.     Plaintiff Tracy Sweeney is a resident of Bon Aqua, Tennessee who purchased and used DevaCurl Products within the relevant time period. Plaintiff Sweeney experienced scalp irritation and hair loss after using the Products.

73.     Plaintiff Kathleen Swilling is a resident of Simpsonville, South Carolina who purchased and used DevaCurl Products within the relevant time period. Plaintiff Swilling experienced scalp irritation and hair loss after using the Products.

74.     Plaintiff Shalayna Talavera is a resident of Corrales, New Mexico who purchased and used DevaCurl Products within the relevant time period. Plaintiff Talavera experienced scalp irritation and hair loss after using the Products.

75.     Plaintiff Alexis Taplin is a resident of Minneapolis, Minnesota who purchased and used DevaCurl Products within the relevant time period. Plaintiff Taplin experienced scalp irritation and hair loss after using the Products.

76.    Plaintiff Maylat Temasgane is a resident of Fort Wayne, Indiana who purchased and used DevaCurl Products within the relevant time period. Plaintiff Temasgane experienced scalp irritation and hair loss after using the Products.

77.    Plaintiff Megan Walsted is a resident of Anchorage, Alaska who purchased and used DevaCurl Products within the relevant time period. Plaintiff Walsted experienced scalp irritation and hair loss after using the Products.

78.    Plaintiff Stephanie Williams is a resident of Lithonia, Georgia who purchased and used DevaCurl Products within the relevant time period. Plaintiff Williams experienced scalp irritation and hair loss after using the Products.

79.    Plaintiff Yessica Zuno is a resident of Tooele, Utah who purchased and used DevaCurl Products within the relevant time period. Plaintiff Zuno experienced scalp irritation and hair loss after using the Products.

80.    Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway Suite 206 New York, NY 10012 United States.

## FACTUAL ALLEGATIONS

81.    At all relevant times, Defendant has marketed the No-Poo Product through national marketing and advertising campaigns as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[17]

82.    On Defendant's website, it gives a three-step process for using the No-Poo Product and the DevaCurl One Condition® Original conditioner. Step one is "Wet curls and apply a

---

[17] https://www.devacurl.com/us/curl-101/product-philosophy

generous amount to your scalp, scrubbing it in. Remember it won't lather, but it's still working!".[18]

83.    For step two it states, "Rinse thoroughly by scrubbing your scalp and letting the water move No-Poo Original through your ends." [19]

84.    Step three states, "Follow with One Condition® Original for additional moisture."[20]

85.    However, despite using Defendant's three step process, the No-Poo Product causes users to sustain scalp irritation, hair loss, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiffs and Class Members is embarrassing and can be extreme in certain instances.

86.    The hair loss suffered by Plaintiffs and Class Members is not limited to the No-Poo Product. Indeed, many consumers, including Plaintiffs, have experienced hair loss, "shedding" and/or "thinning" after using Defendant's Products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

87.    Consumers of the Products pay a premium for them far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for $46.00 as compared to similar retail products sold at Target for as little as $3.99,[21] a difference of more than $42.

88.    Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, in

---

[18] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930 (last visited January 22, 2019)
[19] *Id.*
[20] *Id.*
[21] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-GG_1918213323_70847768576_pla-419288853760_1784578_353573794076_9021734_c&country_switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945.

respect to Defendant's No-Poo Product, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

89.    However, neither the product packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. For example, nowhere on the labeling of the No-Poo Product does it mention scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:


22

22 https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ (last visited January 13, 2020).





---

[23] https://www.ulta.com/no-poo-original-zero-lather-conditioning
cleanser?productId=xlsImpprod3960027 (last visited January 13, 2020).

[24] *Id.*

[25] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-
cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ (last visited January 13, 2020).

[26] *Id.*

90.     Similarly, nowhere on any of the packaging of the other of the Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.[27]

91.     With regard to its One Condition® Original product, at all relevant times, Defendant has marketed this product through national marketing and advertising campaigns as a premium product that is "free of harsh ingredients" and made with "nourishing, hydrating ingredients."

92.     Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[28]

93.     Incredibly, on Defendant's website, Defendant claims that shedding of hair is "normal":

If you have curly hair, chances are you've dealt with hair shedding. **For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal.** But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[29]

94.     Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts.'[30]

95.     Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[31]

96.     Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."[32]

---

[27] *See* Appendix A attached hereto.
[28] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898
[29] https://www.devacurl.com/blog/hair-shedding-101/ (last visited January 22, 2019).
[30] *Id.*
[31] *Id.*
[32] *Id.*

97.     Further, Defendant claims that shedding is not preventable. On its website it states:

**Can I prevent shedding?**

In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned.[33]

98.     Defendant further includes a list of recommendations to lessen shedding. None of the recommendations to reduce shedding include ceasing the use of the No-Poo Product or any of the Products:

**How can I lessen the shedding?**
1.     Find the right <u>cleanser and conditioner</u> for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.
2.     Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to <u>clarify</u> and <u>exfoliate</u>.
3.     Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like <u>Wash Day Wonder</u>) before cleansing and finger detangling afterwards can make a world of difference.[34]

99.     Above all, far from being the panacea promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

100.     Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

101.     Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of

---
[33] *Id.*
[34] *Id.*

sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

102. By marketing, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

103. By marketing, advertising, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

104. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has exclusive access to data pertaining to the Products' defect that Plaintiffs and members of the proposed Classes could not and did not have.

105. Therefore, Plaintiffs, on behalf of themselves, the Nationwide Class, and the Subclasses, hereby bring this action for violations of various state and federal laws.

**I.   Defendant's Misrepresentations and Omissions are Material to Consumers**

106. Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide: namely, to promote healthier hair than other traditional cleansers

and conditioners. Consumers purchase the Products due to Defendant's claim they will not dry out hair and maintain maximum color.

107.    Consumers also pay a premium for the Products over comparable hair products on the market.

108.    Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use. Further, consumers have also shown that changing from using the Products eliminates shedding.

109.    Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

110.    Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

111.    Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as ""When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[35]

## II.    Plaintiffs' Experiences

112.    Plaintiff Ismahan Abdulahi purchased and used the Products, including No-Poo Original, and Light Defining Gel. Plaintiff Abdulahi purchased the Products from Mardens.

113.    Plaintiff Abdulahi relied on ingredients listed on the packaging when deciding to purchase the Products.

---

[35] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898

114.    During the time she used the Products, Plaintiff Abdulahi began to notice the problems alleged herein. For example, in 2018, within a few uses of the Products, Plaintiff Abdulahi began to experience redness, and itchiness of the scalp. In 2018, within a few uses of the Products, she also noticed excessive shedding in handfuls when washing her hair.

115.    Plaintiff Abdulahi discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

116.    Plaintiff Isabella Angelone purchased and used the Products, including No-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, and Light Defining Gel. Plaintiff Angelone purchased the Products from Ulta Beauty.

117.    Plaintiff Angelone relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

118.    During the time she used the Products, Plaintiff Angelone began to notice the problems alleged herein. For example, in November 2019, Plaintiff Angelone began to experience itchiness of the scalp and dandruff. In November 2019, she also noticed excessive shedding in chunks when washing her hair.

119.    Plaintiff Angelone discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Angelone's scalp irritation and hair loss has subsided since discontinuing use of the Products.

120.    Plaintiff Zefan Araya purchased and used the Products, including No-Poo Decadence, One Condition Decadence, and other DevaCurl Products. Plaintiff Araya purchased the Products from Amazon.

121.    Plaintiff Araya relied on benefits listed on the website. and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

122.    During the time she used the Products, Plaintiff Araya began to notice the problems alleged herein. For example, in September 2019, Plaintiff Araya began to experience itchiness, dryness, and flakiness of the scalp. In May 2019, she also noticed excessive shedding when washing her hair. Plaintiff Araya's hair became noticeably thinner at the root and multiple bald spots have emerged.

123.    Plaintiff Araya discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

124.    Plaintiff Makayla Baker purchased and used the Products, including No-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Baker purchased the Products from Cosmoprof.

125.    Plaintiff Baker relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

126.    During the time she used the Products, Plaintiff Baker began to notice the problems alleged herein. For example, within the first few weeks of using the Products in 2018, Plaintiff Baker began to experience dandruff, itchiness, and thick build up on the scalp. In May 2019, she also noticed excessive shedding in handfuls when washing her hair. Plaintiff Baker's hair became noticeably thinner.

127.    Plaintiff Baker discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Baker's scalp irritation and hair loss has subsided since discontinuing use of the Products.

128.    Plaintiff Callie Ballard purchased and used the Products, including No-Poo Original, One Condition Original, Light Defining Gel, and other DevaCurl Products. Plaintiff Ballard purchased the Products from Ulta Beauty.

129.    Plaintiff Ballard relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

130.    During the time she used the Products, Plaintiff Ballard began to notice the problems alleged herein. For example, Plaintiff Ballard gradually began to experience increasingly excessive shedding.

131.    Plaintiff Ballard discontinued use of the products due to the hair loss, and thereafter switched to another brand of hair care products. Plaintiff Ballard's hair loss has subsided since discontinuing use of the Products.

132.    Plaintiff Sara Barlow purchased and used the Products, including and One Condition Original. Plaintiff Barlow purchased the Products from Ulta Beauty and Woodmans.

133.    Plaintiff Barlow relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

134.    During the time she used the Products, Plaintiff Barlow began to notice the problems alleged herein. For example, in April 2019, Plaintiff Barlow began to experience redness, itchiness, flakiness, sores, abrasions, blisters, and oily scales on her scalp. In January 2019, she also noticed excessive shedding in large clumps when washing her hair. Plaintiff Barlow's hair became visibly thinner at the scalp.

135.    Plaintiff Barlow discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Barlow's scalp irritation and hair loss has improved since discontinuing use of the Products.

136.    Plaintiff Yamila Cardenas purchased and used the Products, including No-Poo Original, Low-Poo Delight, One Condition Delight, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Cardenas purchased the Products from The Exchange.

137.    Plaintiff Cardenas relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

138.    During the time she used the Products, Plaintiff Cardenas began to notice the problems alleged herein. For example, in October 2019, Plaintiff Cardenas began to experience dandruff, itchiness, burning of the scalp. In June 2019, she also noticed excessive shedding in clumps when washing her hair.

139.    Plaintiff Cardenas discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Cardenas's scalp irritation and hair loss has improved since discontinuing use of the Products.

140.    Plaintiff Kara Carter purchased and used the Products, including Low-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff Carter purchased the Products from Ulta Beauty.

141.    Plaintiff Carter relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

142.    During the time she used the Products, Plaintiff Carter began to notice the problems alleged herein. For example, in August 2019, Plaintiff Carter began to experience dandruff, itchiness, tenderness of the scalp. In August 2019, she also noticed excessive shedding when washing her hair and handfuls of hair coming out during styling. Plaintiff Carter's hair became noticeably thinner.

143.    Plaintiff Carter discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Carter's scalp irritation and hair loss has subsided since discontinuing use of the Products.

144.    Plaintiff Michelle Cherry purchased and used the Products, including Low-Poo Original, One Condition Original, and Ultra Defining Gel. Plaintiff Cherry purchased the Products from Amazon, Sephora, and Ulta Beauty.

145.    Plaintiff Cherry relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

146.    During the time she used the Products, Plaintiff Cherry began to notice the problems alleged herein. For example, in 2019, Plaintiff Cherry began to experience itchiness, dryness, and small bumps on the scalp. In 2019, she also noticed increasingly excessive shedding.

147.    Plaintiff Cherry discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Cherry's scalp irritation and hair loss has improved since discontinuing use of the Products.

148.    Plaintiff Charity Christensen purchased and used the Products, including Low-Poo Original. Plaintiff Christensen purchased the Products from Dermstore.com.

149.    Plaintiff Christensen relied on benefits listed on the website when deciding to purchase the Products.

150.    During the time she used the Products, Plaintiff Christensen began to notice the problems alleged herein. For example, during use and immediately after beginning to use the Products, Plaintiff Christensen began to experience itchiness and sensitivity of the scalp. She also noticed visible thinning of the hair.

151.    Plaintiff Christensen discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

152.    Plaintiff Marisa Cohen purchased and used the Products, including No-Poo Original, Low-Poo Original, Low-Poo Delight, One Condition Original, One Condition Delight, One Condition Decadence, Light Defining Gel, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Cohen purchased the Products from Amazon, Cosmoprof, and a salon.

153.    Plaintiff Cohen relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

154.    During the time she used the Products, Plaintiff Cohen began to notice the problems alleged herein. For example, in2017, Plaintiff Cohen began to experience itchiness, dandruff, and a sore area on her scalp that would repetitively bleed and scab over. In 2019, she also noticed excessive shedding in handfuls when washing her hair. Plaintiff Cohen's hair became noticeably thinner.

155.    Plaintiff Cohen discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

156.    Plaintiff Julie Corcoran purchased and used the Products, including No-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff Corcoran purchased the Products from Amazon, Ebay, and Ulta Beauty.

157.    Plaintiff Corcoran relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

158.    During the time she used the Products, Plaintiff Corcoran began to notice the problems alleged herein. For example, in November 2017, within one month of beginning to use the Products, Plaintiff Corcoran began to experience itchiness and burning of the scalp. In late 2019, she also noticed excessive shedding during washing her hair and throughout the day. Plaintiff Corcoran's hair became noticeably thinner in areas.

159.    Plaintiff Corcoran discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Corcoran's scalp irritation and hair loss has subsided since discontinuing use of the Products.

160.    Plaintiff Courtney Deist purchased and used the Products, including Low-Poo Original, and One Condition Original. Plaintiff Deist purchased the Products from Amazon.

161.    Plaintiff Deist relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

162.    During the time she used the Products, Plaintiff Deist began to notice the problems alleged herein. For example, in April 2017, Plaintiff Deist began to experience dryness and itchiness of the scalp. In 2017, she also noticed excessive shedding in chunks when washing her hair.

163.    Plaintiff Deist discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Deist's scalp irritation and hair loss has subsided since discontinuing use of the Products.

164.    Plaintiff Jasmyn Dobe purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff Dobe purchased the Products from Ulta Beauty.

165.    Plaintiff Dobe relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

166.    During the time she used the Products, Plaintiff Dobe began to notice the problems alleged herein. For example, during the first week of using the Products, Plaintiff Dobe began to experience itchiness, dryness, flakiness of the scalp. Immediately after using the products for the first time, she also noticed visibly thinning hair.

167.    Plaintiff Dobe discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Dobe's scalp irritation and hair loss has subsided since discontinuing use of the Products.

168.    Plaintiff Kelsey Dubord purchased and used the Products, including Low-Poo Delight, One Condition Delight, Light Defining Gel, and other DevaCurl Products. Plaintiff Dubord purchased the Products from a salon.

169.    Plaintiff Dubord relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

170.    During the time she used the Products, Plaintiff Dubord began to notice the problems alleged herein. For example, in 2020, within a few uses of the Products, Plaintiff Dubord began to experience dandruff, itchiness, inflammation, soreness of the scalp. She also noticed excessive shedding in clumps when washing, brushing, and detangling her hair.

171.    Plaintiff Dubord discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Dubord's scalp irritation and hair loss has subsided since discontinuing use of the Products.

172.    Plaintiff Kristen Duvall purchased and used the Products, including No-Poo Decadence, One Condition Decadence, and other DevaCurl Products. Plaintiff Duvall purchased the Products from Sephora.

173.    Plaintiff Duvall relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

174.    During the time she used the Products, Plaintiff Duvall began to notice the problems alleged herein. For example, in December 2018, Plaintiff Duvall began to experience itchiness, dryness, and flaking. In October 2018, she noticed the hair around the crown became thin and sparse.

175.    Plaintiff Duvall discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Duvall's scalp irritation and hair loss has subsided since discontinuing use of the Products.

176.    Plaintiff Valerie Giraldo purchased and used the Products, including No-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff Giraldo purchased the Products from a salon.

177.    Plaintiff Giraldo relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

178.    During the time she used the Products, Plaintiff Giraldo began to notice the problems alleged herein. For example, in the summer of 2019, Plaintiff Giraldo began to experience dandruff, itchiness, and burning of the scalp. In September 2019, she also noticed visible thinning of the hair and bald spots.

179.    Plaintiff Giraldo discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Giraldo's scalp irritation and hair loss has improved since discontinuing use of the Products.

180.    Plaintiff Sonya Hanisch purchased and used the Products, including No-Poo Original, One Condition Original, and Ultra Defining Gel. Plaintiff Hanisch purchased the Products from Cosmoprof.

181.    Plaintiff Hanisch relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

182.    During the time she used the Products, Plaintiff Hanisch began to notice the problems alleged herein. For example, in September 2019, Plaintiff Hanisch began to experience redness, tightness, itchiness, and sensitivity of the scalp. In October 2019, she also noticed excessive shedding when combing her hair.

183.    Plaintiff Hanisch discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Hanisch's scalp irritation and hair loss has subsided since discontinuing use of the Products.

184.     Plaintiff Tara Hill purchased and used the Products, including Low-Poo Original, No-Poo Decadence, One Condition Original, One Condition Decadence, and Ultra Defining Gel. Plaintiff Hill purchased the Products from Amazon and a salon.

185.     Plaintiff Hill relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

186.     During the time she used the Products, Plaintiff Hill began to notice the problems alleged herein. For example, during various periods of using the Products, Plaintiff Hill began to experience extreme itchiness, thick build up, and dandruff. In 2018, she also noticed drastic thinning all over.

187.     Plaintiff Hill discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

188.     Plaintiff Lauren House purchased and used the Products, including No-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff House purchased the Products from Cosmoprof and a salon.

189.     Plaintiff House relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

190.     During the time she used the Products, Plaintiff House began to notice the problems alleged herein. For example, in the summer of 2019, Plaintiff House began to experience extreme itchiness, dandruff and burning of the scalp. In spring of 2019, she also noticed excessive shedding, thinning, and bald spots.

191.     Plaintiff House discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff House's scalp irritation and hair loss has improved since discontinuing use of the Products.

192.    Plaintiff Michela Kenning purchased and used the Products, including No-Poo Original, One Condition Original, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Kenning purchased the Products from Ulta Beauty and other third-party retailers.

193.    Plaintiff Kenning relied on ingredients listed on the packaging and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

194.    During the time she used the Products, Plaintiff Kenning began to notice the problems alleged herein. For example, in 2018, and increasingly in the last few months, Plaintiff Kenning began to experience dryness, buildup, bumpy scabbing, bleeding, and dandruff on her scalp. In 2019, she also noticed excessive shedding when washing and thinning in the temple region.

195.    Plaintiff Kenning discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

196.    Plaintiff Bonnie Kolber purchased and used the Products, including No-Poo Original, Low-Poo Delight, One Condition Original, One Condition Delight, and other DevaCurl Products. Plaintiff Kolber purchased the Products from Amazon and a salon.

197.    Plaintiff Kolber relied on ingredients listed on the packaging when deciding to purchase the Products.

198.    During the time she used the Products, Plaintiff Kolber began to notice the problems alleged herein. For example, in 2017, Plaintiff Kolber began to notice excessive shedding when washing.

199.    Plaintiff Kolber discontinued use of the products due to the hair loss, and thereafter switched to another brand of hair care products. Plaintiff Kolber's hair loss has subsided since discontinuing use of the Products.

200.    Plaintiff Jenny Krumroy purchased and used the Products, including Low-Poo Delight, and One Condition Delight. Plaintiff Krumroy purchased the Products from Amazon, Jet and other third-party retailers.

201.    Plaintiff Krumroy relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

202.    During the time she used the Products, Plaintiff Krumroy began to notice the problems alleged herein. For example, in late 2019, Plaintiff Krumroy began to experience itchiness, burning, scabbing, and oozing of the scalp. In 2018, within a few months of using the Products, she also noticed increasingly excessive shedding of her hair in handfuls.

203.    Plaintiff Krumroy discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Krumroy's scalp irritation and hair loss has subsided since discontinuing use of the Products.

204.    Plaintiff Jordan Law purchased and used the Products, including One Condition Original, and other DevaCurl Products. Plaintiff Law purchased the Products from Amazon, CVS, Ulta Beauty and a salon.

205.    Plaintiff Law relied on benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

206.    During the time she used the Products, Plaintiff Law began to notice the problems alleged herein. For example, in July 2019, Plaintiff Law began to experience itchiness, and burning of the scalp. In September 2019, she also noticed excessive shedding when washing and detangling her hair.

207.    Plaintiff Law discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Law's hair loss has improved since discontinuing use of the Products.

208.    Plaintiff Stacy Lazara purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Delight, and other DevaCurl Products. Plaintiff Lazara purchased the Products from third-party retailers.

209.    Plaintiff Lazara relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

210.    During the time she used the Products, Plaintiff Lazara began to notice the problems alleged herein. For example, in 2019, beginning immediately after the first use of the Products, Plaintiff Lazara began to experience itchiness, soreness, and tenderness of the scalp. She also noticed excessive shedding when washing her hair.

211.    Plaintiff Lazara discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Lazara's scalp irritation and hair loss has subsided since discontinuing use of the Products.

212.    Plaintiff Samantha Lee purchased and used the Products, including No-Poo Original, One Condition Original, Light Defining Gel, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Lee purchased the Products from Ulta Beauty.

213.    Plaintiff Lee relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

214.    During the time she used the Products, Plaintiff Lee began to notice the problems alleged herein. For example, in July 2019, Plaintiff Lee began to experience dryness, flakiness,

and bleeding of the scalp. In August 2019, she also noticed excessive shedding in large clumps when washing her hair.

215.    Plaintiff Lee discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

216.    Plaintiff Noor Mahmood purchased and used the Products, including No-Poo Original, Low-Poo Original, Low-Poo Delight, One Condition Original, and Light Defining Gel. Plaintiff Mahmood purchased the Products from Sephora and Ulta Beauty.

217.    Plaintiff Mahmood relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

218.    During the time she used the Products, Plaintiff Mahmood began to notice the problems alleged herein. For example, in June 2019, Plaintiff Mahmood began to experience redness, soreness, tenderness of the scalp. In early 2019, she also noticed noticeable thinning of the hair.

219.    Plaintiff Mahmood discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Mahmood's scalp irritation and hair loss has improved since discontinuing use of the Products.

220.    Plaintiff Erika Martinez purchased and used the Products, including No-Poo Original, No-Poo Decadence, Light Defining Gel, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Martinez purchased the Products from Ulta Beauty.

221.    Plaintiff Martinez relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

222.    During the time she used the Products, Plaintiff Martinez began to notice the problems alleged herein. For example, in 2019, Plaintiff Martinez began to experience itchiness, burning of the scalp that was elevated at night. Within a month of beginning to use the Products, she also noticed excessive shedding in large clumps when washing, combing, and styling her hair.

223.    Plaintiff Martinez discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Martinez's scalp irritation and hair loss has subsided since discontinuing use of the Products.

224.    Plaintiff Mariya Melamud purchased and used the Products, including No-Poo Original, No-Poo Decadence, One Condition Decadence, and other DevaCurl Products. Plaintiff Melamud purchased the Products from Ulta Beauty.

225.    Plaintiff Melamud relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

226.    During the time she used the Products, Plaintiff Melamud began to notice the problems alleged herein. For example, in 2017, Plaintiff Melamud began to experience itchiness, burning sensations, and acne-like bumps on the scalp. In 2017, shortly after beginning to use the Products, she also noticed excessive shedding when washing and brushing her hair.

227.    Plaintiff Melamud discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Melamud's scalp irritation and hair loss has subsided since discontinuing use of the Products.

228.    Plaintiff Yasmina Mendez purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, Light Defining Gel, and other DevaCurl Products. Plaintiff Mendez purchased the Products from The Curl Wisperer, Publix, Sephora, and Ulta Beauty.

229.    Plaintiff Mendez relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

230.    During the time she used the Products, Plaintiff Mendez began to notice the problems alleged herein. For example, in November 2019, Plaintiff Mendez began to experience itchiness, scabbing and dandruff on her scalp. In December 2018, she also noticed significant hair loss in chunks. Plaintiff Mendez's hair became noticeably thinner at the scalp.

231.    Plaintiff Mendez discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Mendez's scalp irritation and hair loss has subsided since discontinuing use of the Products.

232.    Plaintiff Allyx Mitchel purchased and used the Products, including Low-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff Mitchel purchased the Products from a salon.

233.    Plaintiff Mitchel relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

234.    During the time she used the Products, Plaintiff Mitchel began to notice the problems alleged herein. For example, in early 2018, a few months after beginning to use the Products, Plaintiff Mitchel began to experience intense itchiness, oily and flakey build up, and excessive dandruff on the scalp. In early 2018, she also noticed excessive shedding in handfuls when combing or brushing after washing her hair.

235.    Plaintiff Mitchel discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

236.    Plaintiff Sherry Morgan purchased and used the Products, including No-Poo Original, Low-Poo Original, Low-Poo Delight, One Condition Original, One Condition Delight,

Light Defining Gel, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Morgan purchased the Products from Target and Ulta Beauty.

237. Plaintiff Morgan relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

238. During the time she used the Products, Plaintiff Morgan began to notice the problems alleged herein. For example, in September 2019, Plaintiff Morgan began to experience redness, itchiness, inflammation, tenderness, soreness, and pain on the scalp. In July 2019, she also noticed excessive shedding when washing her hair, causing the shower drain to clog. Plaintiff Morgan's hair became noticeably thinner.

239. Plaintiff Morgan discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Morgan's scalp irritation and hair loss has improved since discontinuing use of the Products.

240. Plaintiff Danneil Musser purchased and used the Products, including No-Poo Decadence, One Condition Decadence, and Ultra Defining Gel. Plaintiff Musser purchased the Products from a salon.

241. Plaintiff Musser relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

242. During the time she used the Products, Plaintiff Musser began to notice the problems alleged herein. For example, in 2019, Plaintiff Musser began to experience itchiness, flakiness, and painful tenderness on the scalp. In 2017, she also noticed excessive shedding.

243.    Plaintiff Musser discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Musser's scalp irritation and hair loss has subsided since discontinuing use of the Products.

244.    Plaintiff Kim Pace purchased and used the Products, including No-Poo Original, One Condition Original, and Light Defining Gel. Plaintiff Pace purchased the Products from Sephora.

245.    Plaintiff Pace relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

246.    During the time she used the Products, Plaintiff Pace began to notice the problems alleged herein. For example, in December 2019, Plaintiff Pace began to experience intense itchiness on the scalp. In January 2020, within a few uses of the Products, she also noticed visible thinning of the hair with concentration in the area where the Products are generally applied first.

247.    Plaintiff Pace discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Pace's scalp irritation and hair loss has improved since discontinuing use of the Products.

248.    Plaintiff Brooke Pangle purchased and used the Products, including Low-Poo Original. Plaintiff Pangle purchased the Products from Ulta Beauty and a salon.

249.    Plaintiff Pangle relied on claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

250.    During the time she used the Products, Plaintiff Pangle began to notice the problems alleged herein. For example, in late 2018, within a few weeks of beginning to use the

Products, Plaintiff Pangle began to experience itchiness, dryness, and burning on the scalp. In late 2018, she also noticed excessive shedding in clumps while washing her hair.

251.    Plaintiff Pangle discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Pangle's scalp irritation and hair loss has subsided since discontinuing use of the Products.

252.    Plaintiff Kassandra Perez purchased and used the Products, including No-Poo Original, One Condition Original, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Perez purchased the Products from Ulta Beauty.

253.    Plaintiff Perez relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

254.    During the time she used the Products, Plaintiff Perez began to notice the problems alleged herein. For example, in March 2019, within two weeks of using the Products, Plaintiff Perez began to experience itchiness, dryness, and dandruff on her scalp.

255.    Plaintiff Perez discontinued use of the products due to the scalp irritation, and thereafter switched to another brand of hair care products. Plaintiff Perez's scalp irritation has subsided since discontinuing use of the Products.

256.    Plaintiff Renae Reeves purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, Light Defining Gel, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Reeves purchased the Products from Amazon and Cosmoprof.

257.    Plaintiff Reeves relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

258.    During the time she used the Products, Plaintiff Reeves began to notice the problems alleged herein. For example, in September 2019, Plaintiff Reeves began to experience burn-like sores on the scalp. She also noticed excessive shedding in clumps when washing her hair.

259.    Plaintiff Reeves discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Reeves's scalp irritation and hair loss has subsided since discontinuing use of the Products.

260.    Plaintiff Breanna Romaine-Guiliano purchased and used the Products, including No-Poo Original, One Condition Original, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Romaine-Guiliano purchased the Products from Ulta Beauty.

261.    Plaintiff Romaine-Guiliano relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

262.    During the time she used the Products, Plaintiff Romaine-Guiliano began to notice the problems alleged herein. For example, in 2018, within a week of beginning to use the Products, Plaintiff Romaine-Guiliano began to experience dandruff. She also noticed excessive shedding and thinning of her hair.

263.    Plaintiff Romaine-Guiliano discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Romaine-Guiliano's scalp irritation and hair loss has subsided since discontinuing use of the Products.

264.    Plaintiff Mindie Roush purchased and used the Products, including Ultra Defining Gel, and other DevaCurl Products. Plaintiff Roush purchased the Products from Ulta Beauty.

265.    Plaintiff Roush relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

266.    During the time she used the Products, Plaintiff Roush began to notice the problems alleged herein. For example, in June 2019, Plaintiff Roush began to experience itchiness, burning, and red bumps on the scalp. In June 2019, she also noticed excessive shedding of her hair and thinning at the scalp.

267.    Plaintiff Roush discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Roush's scalp irritation and hair loss has subsided since discontinuing use of the Products.

268.    Plaintiff Jamely Sanchez purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, One Condition Decadence, and other DevaCurl Products. Plaintiff Sanchez purchased the Products from Cosmoprof.

269.    Plaintiff Sanchez relied on ingredients listed on the packaging and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

270.    During the time she used the Products, Plaintiff Sanchez began to notice the problems alleged herein. For example, in 2019, Plaintiff Sanchez began to experience itchiness, buildup, and acne-like bumps on the scalp. In spring of 2019, she also noticed excessive shedding and breakage when washing her hair. Plaintiff Sanchez's hair began coming out in clumps causing overall thinness of her hair and visibility of her scalp.

271.    Plaintiff Sanchez discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Sanchez's scalp irritation and hair loss has improved since discontinuing use of the Products.

272.    Plaintiff Kimberly Smith purchased and used the Products, including No-Poo Decadence, Light Defining Gel, and other DevaCurl Products. Plaintiff Smith purchased the Products from Ulta Beauty.

273.    Plaintiff Smith relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

274.    During the time she used the Products, Plaintiff Smith began to notice the problems alleged herein. For example, in 2019, Plaintiff Smith began to experience redness, burning, and scabbing on the scalp. She also noticed excessive shedding in chunks when washing and refreshing her curls.

275.    Plaintiff Smith discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Smith's scalp irritation and hair loss has subsided since discontinuing use of the Products.

276.    Plaintiff Samantha Stewart purchased and used the Products, including Low-Poo Delight, No-Poo Decadence, One Condition Delight, One Condition Decadence, and Ultra Defining Gel. Plaintiff Stewart purchased the Products from Ulta Beauty.

277.    Plaintiff Stewart relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

278.    During the time she used the Products, Plaintiff Stewart began to notice the problems alleged herein. For example, within the past few months, Plaintiff Stewart began to experience excessive shedding when washing and her hair became noticeably thinner.

279.    Plaintiff Stewart discontinued use of the products due to the hair loss, and thereafter switched to another brand of hair care products.

280.    Plaintiff Samantha Sutton purchased and used the Products, including No-Poo Original, and other DevaCurl Products. Plaintiff Sutton purchased the Products from Ulta Beauty.

281.    Plaintiff Sutton relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

282.    During the time she used the Products, Plaintiff Sutton began to notice the problems alleged herein. For example, in 2018, within two months of beginning to use the Products, Plaintiff Sutton began to experience itchiness, dryness, and red bumps on her scalp. Within six months of using the Products she also noticed thinning at the crown and around the perimeter of her hair.

283.    Plaintiff Sutton discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

284.    Plaintiff Tracy Sweeney purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, Light Defining Gel, and Ultra Defining Gel. Plaintiff Sweeney purchased the Products from Ulta Beauty and other third-party retailers.

285.    Plaintiff Sweeney relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

286.    During the time she used the Products, Plaintiff Sweeney began to notice the problems alleged herein. For example, in February 2019, within one month of beginning to use the Products, Plaintiff Sweeney began to experience itchiness and bumps on the scalp. She also noticed excessive shedding in clumps when washing and combing her hair.

287.     Plaintiff Sweeney discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Sweeney's scalp irritation and hair loss has subsided since discontinuing use of the Products.

288.     Plaintiff Kathleen Swilling purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, Light Defining Gel, and Ultra Defining Gel. Plaintiff Swilling purchased the Products from Amazon, and Ulta Beauty.

289.     Plaintiff Swilling relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

290.     During the time she used the Products, Plaintiff Swilling began to notice the problems alleged herein. For example, in August 2019, Plaintiff Swilling began to experience itchiness and buildup on the scalp. In 2018, she noticed excessive shedding and thinning around the perimeter of her hair.

291.     Plaintiff Swilling discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

292.     Plaintiff Shalayna Talavera purchased and used the Products, including Low-Poo Delight, One Condition Delight, and other DevaCurl Products. Plaintiff Talavera purchased the Products from Armstrong McCall Beauty Supply.

293.     Plaintiff Talavera relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

294.     During the time she used the Products, Plaintiff Talavera began to notice the problems alleged herein. For example, in December 2019, within a month of beginning to use the Products, Plaintiff Talavera began to experience itchiness, bumps, dandruff, and scabbing on the

scalp. In late December 2019, she also noticed excessive shedding during washing and thinning around the perimeter of the scalp.

295.    Plaintiff Talavera discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Talavera's scalp irritation and hair loss has improved since discontinuing use of the Products.

296.    Plaintiff Alexis Taplin purchased and used the Products, including No-Poo Original, One Condition Original, and other DevaCurl Products. Plaintiff Taplin purchased the Products from Ulta Beauty and a salon.

297.    Plaintiff Taplin relied on benefits listed on the website and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

298.    During the time she used the Products, Plaintiff Taplin began to notice the problems alleged herein. For example, within the first two months after beginning to use the Products in June 2019, Plaintiff Taplin began to experience dryness, itchiness, and flakiness of the scalp. In July 2019, within a few uses of the Products, she also noticed excessive shedding when washing her hair. Plaintiff Taplin's hair became noticeably thinner.

299.    Plaintiff Taplin discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Taplin's scalp irritation and hair loss has subsided since discontinuing use of the Products.

300.    Plaintiff Maylat Temasgane purchased and used the Products, including No-Poo Decadence, One Condition Decadence, and Ultra Defining Gel. Plaintiff Temasgane purchased the Products from Ulta Beauty.

301.    Plaintiff Temasgane relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

302.    During the time she used the Products, Plaintiff Temasgane began to notice the problems alleged herein. For example, in May 2019, beginning immediately after using the Products, Plaintiff Temasgane began to experience redness and itchiness of the scalp. Within a few weeks of beginning to use the Products, she also noticed excessive shedding in chunks when washing and detangling her hair, resulting in a bald spot.

303.    Plaintiff Temasgane discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Temasgane's scalp irritation and hair loss has subsided since discontinuing use of the Products.

304.    Plaintiff Megan Walsted purchased and used the Products, including No-Poo Original, Low-Poo Original, One Condition Original, One Condition Delight, Light Defining Gel, and other DevaCurl Products. Plaintiff Walsted purchased the Products from Cosmoprof.

305.    Plaintiff Walsted relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

306.    During the time she used the Products, Plaintiff Walsted began to notice the problems alleged herein. For example, in May 2018, Plaintiff Walsted began to experience dryness, rough scaly patches, and painful tenderness of the scalp. In May 2018, she also noticed excessive shedding in handfuls when washing her hair.

307.    Plaintiff Walsted discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products.

308.    Plaintiff Stephanie Williams purchased and used the Products, including No-Poo Original, Ultra Defining Gel, and other DevaCurl Products. Plaintiff Williams purchased the Products from Sephora and Ulta Beauty.

309.    Plaintiff Williams relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

310.    During the time she used the Products, Plaintiff Williams began to notice the problems alleged herein. For example, within the first month of using the Products, in February 2019, Plaintiff Williams began to experience extreme itchiness and dryness of the scalp. She also noticed progressively worsening and excessive shedding. Plaintiff Williams experienced visible thinning around the perimeter of her hair and multiple balding patches.

311.    Plaintiff Williams discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Williams's scalp irritation and hair loss has subsided since discontinuing use of the Products.

312.    Plaintiff Yessica Zuno purchased and used the Products, including Low-Poo Original, and Light Defining Gel. Plaintiff Zuno purchased the Products from Walmart.

313.    Plaintiff Zuno relied on ingredients listed on the packaging, benefits listed on the website, and claims that the product was specifically for curly hair on the packaging when deciding to purchase the Products.

314.    During the time she used the Products, Plaintiff Zuno began to notice the problems alleged herein. For example, in March 2018, within one week of beginning to use the Products, Plaintiff Zuno began to experience itchiness and buildup on the scalp. In April 2018, within a few weeks of beginning to use the Products, she also noticed visible thinning of her hair.

315.    Plaintiff Zuno discontinued use of the products due to the scalp irritation and hair loss, and thereafter switched to another brand of hair care products. Plaintiff Zuno's scalp irritation and hair loss has subsided since discontinuing use of the Products.

316.    Plaintiffs are in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiffs and Class Members purchased worthless products that caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, i.e., promoting healthy hair. Plaintiffs and the Class Members were in fact misled by Defendant's omissions and misrepresentations in respect to the Product. Plaintiffs and Class Members would have purchased other hair care products if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product.

### III.    Additional Common Facts

317.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is littered with stories of from other Class Members complaining of the same issues with the Products as Plaintiffs have alleged herein.

318.    As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle 'thecurlninja' on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[36]

319.    According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same. Before and after photos show the damage Defendant's Products caused to Ms. Mero's hair:

**Before:**

---

[36] https://abc7ny.com/5906690/.



**<u>After:</u>**



320.    As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than **35,000 members**.

321.    According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[37]

322.    According to reports, Ms. Mero isn't alone. Another famous Youtuber with more than 200,000 subscribers, posted her own video on January 31 where she speaks about her own experience with Defendant's products. *See* https://www.youtube.com/watch?v=nuo8UCcyDhg ("Why I Stopped Using DevaCurl").

---

[37] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

323.    According to reports, the YouTuber tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced dandruff," Malik said. "My scalp was on fire on some days, I didn't know what it was."[38]

324.    Similarly, a thread on Sephora originally posted in 2016 is now flooded with comments from customers complaining about the products and looking for answers.[39]

325.    The complaints are endless:



326.    Additional online complaints-dating back several years, are documented below:

•    https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March, 20, 2016, updated on December 4, 2019: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which I've NEVER had a problem with before. I also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that

[38] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

[39] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473

is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December, 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 4, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 6, 2019: "Hi - so glad I found your post and many others about how Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me . She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair ! If anyone has a shampoo they recommend let me know . For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back . Good luck to you & everyone out there who experienced what I did - I wish we could all sue them !!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 8, 2019: "Me too! I thought it was menopause but it's Deva Curl products! There's a Facebook group about the issue too. I've emailed Deva Curl to return my

products for a refund. Hope they will be responsible enough to do at least a refund. Horrible hair loss! Even my daughter had horrible hair loss.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!!
and Deva Curl... thanks for that medical bill!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 4, 2019: "Yes. I used the No Poo Shampoo and Conditioner for two months. Every time I used these products my hair fell out in clumps during the shampoo and conditioning process. Initially, I thought this was me loosing dead hair, but it was more than that. I discontinued use and my hair slowed down dramatically in falling out. I've continued to use the styling products, but I'm questioning this now. Some days my hair looks amazing, and other days these products make my hair look terrible (i.e. stringy, frizzy, broomstick dry, distorted curl patterns). I don't have heat damage because I love wearing my hair flowy and curly, so it's not that. I'm very confused by these experiences! Overall, I'm not convinced it's worth the money. I've been reading about other women who've had similar experiences, which is alarming. I hope all of us continue to share. Granted, there are pros to the styling products, but the cons are pushing me away. I've watched the videos on how to use the products and I'm skilled at styling my hair, but all of this isn't adding up for me. I hope this helps!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 15, 2019: "I have had the exact same issues. When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 13, 2019: "I had the same reaction, I never really had dandruff until using devacurl. I bought the shampoo & conditioner & didn't finish either. My head was super itchy along with dandruff & hair-loss. It did make my hair a little curlier but overall I thinks it's a terrible product."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May, 19, 2019: "Yes! My hair is thin, fine, frizzy, and curly. Deva curl took half of the little bit of hair I had! I'm so upset! I finally grew my hair long. And now I have to crop it!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and Scalp Issues from Deva Curl Products - You are not Alone! We hope that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they belived in that did this to them!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April, 10, 2019: "I'm having the exact same problem right now!!!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April, 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March, 24, 2019: "This can't be a coincidence. So I started using the no-poo almost exclusively on my wash days except for once a month when I used build up buster. Before that I alternated with the low poo Every other wash day and I never experienced shedding. Now that I started using mostly noo poo I'm seeing crazy shedding and breaking. I just switched to Oidad VitalCurl and can't report on results but first impressions my scalp feels clean and my hair looks nice. I also read online that noo-poo in hard water areas can cause PH imbalances in the hair, which can lead to shedding. I know I have hard water so I'm hoping by using new brands I'll be able to use DevaCurl again someday because for the first 2 years it was great."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 10, 2019: "I've used DivaCurl for a while and wonder now if it's making my hair thin out. It may be because I'm an little older, but I never had a problem before. The no-poo option works well for me because sulfates dry out my hair really bad. I think I'll switch over to Carol's Daughter, Mixed Chicks, or Shea Moisture to see what happens"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 7, 2019: "I finally had to stop using their products, which broke my heart because they made my hair so beautiful...I really loved my unruly, curly, red Irish hair for the first time ever. I used it for probably two years. I started noticing my hair thinning, which was disturbing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding when my hair was

56

wet. My ponytail is barely anything now, and my long hair (which I took such a long time to grow and care for) is limp and straggly looking when I don't take great care to fluff it up with thickening products. I was losing clumps of hair not just in the shower (where I would find whole chunks wrapped around my hands), but all over my bathroom floor, my bed, my couch...literally anywhere I had been, there was hair to clean up. . Horrifying at any age, and especially in your mid twenties. I have also developed very sensitive spots on my scalp, where I feel "pinpricks" in the front whenever wearing a ponytail (no matter how loose it is).

I finally saw a dermatologist that specialized in women's hair loss. She agreed I had hair loss, but could not give a definitive answer as to why and started me on spironolactone to suppress any excess androgen (although my hormone levels were tested and found to be normal). Around the same time I switched from Deva products to more generic (but curly-girl friendly) products. After a couple months, I started to notice I had probably 1/5 the amount of hair loss, and it finally seemed normal. No more sweeping up hair from the bathroom floor every single day.

I was able to purchase the Deva gel again (the one I had been using in the interim shaped my curls nicely, but left it too frizzy and they fell out quickly). Each time I use this, I am right back to crazy clumps of hair in the shower and on the floor again. I realized something in the Devacurl *has* to be contributing to my hair loss over the last two years, and especially the last year before I finally got medical help. I don't know if it's an allergy or what, I have no known problems. But it's sort of a relief to see other people reporting these problems, too.

If anyone has recommendations for products with similar hold and frizz-taming capability, I really miss loving my hair. It used to be my proudest feature (after a lifetime of hating and fighting it), and now I feel like it's something I dislike about myself again."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December, 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone has any detangling recommendations - not just products, but techniques too, I'm happy for them."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April, 5, 2019: "Good morning, I could do, use your help. I'm going through the exact same thing. Except, I have never used this product. I was just wondering if you ever found a solution to your hair loss?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on October, 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified

now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different including parting all over... very unhappy and nervous , I am going to stop using it and see if it make a difference!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either! I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl. So it had to be switching to Deva Curl. I also only wash my hair once a week. So I know i'm not over washing it. I was also using the buildup buster every 2 washes.
I am nearly in tears from how much hair it caused me to lose.
I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing! I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So I'm having to trim them 3 times a week. Ugh. Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 22, 2016: "Wow! You lasted longer than me. I find Deva Curl to be too heavy for the hairstyle I want. Also, couldn't get my scalp clean with it. It used to cause oily spots.
I feel that hair sheds everyday. You just notice it a lot more during shampoo'ing. Some people are not washing their hair for days so then it may seem like a lot of hair shedding at once."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May, 2, 2019: "Me too I have never had thin hair its so thin and limp and disgusting. Im so sad"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 22, 2016: "I feel like i have been loosing a lot of hair. I notice its thinner. When i use my no poo shampoo and conditioner, tons of hair comes out. I am curious too if thats the problem. For now i am going to use my shea moisture shampoo and conditioner to see if shedding slacks off.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 7, 2018: "I use every three days and my hair is shedding REALLY bad"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on December 2011: "A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has course 4a thick hair. Thanks!"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on November 2013: "it happens to me, too. I'm using Deva Products, and for the last 3 months, I'm losing hair handful after handful!"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on November 2013: "It happened to me using the no poo, because of the wheat protein (I'm a gluten free gal). Can't say that this would be the same case for you. Try switching up your products to see if it still happens. I used their low poo and one condition without any problems."

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on March 2014: "I've been experiencing this also! I'm a little freaked out as I'm getting married in September, and I'm afraid I won't have any hair left by then!
I've been using CG method for about 3 years. Was using WEN but found it to be too expensive to keep up. I switched to Deva about a year ago. I've been using Lo-Poo once a week, then One condition and styling cream every other day. Lately, I've been taking gobs of hair out of the shower drain. I haven't changed meds, or anything else that I can think of, so I'm wondering what's going on.
I'd make a switch to something else, but I want to be sure I'm still 100% sulfate and silicone free. Any suggestions?"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on March 2014: "Thanks! A quick observation this morning...I used Lo-Poo and One Cond today, and just now, I found myself itching my scalp. :sad1: HHmmmmm....I wonder how long I've been doing this subconsciously without noticing it! Even thought I only use it once a week, maybe it's the Lo Poo and not the One that's causing the issue. I'm going to try KMF Whenever, and also I'm reading a lot about Trader Joe's conditioners, so that may be another option to try."

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on May 2016 "Hey, I really appreciate your post about the problems you are having with hair loss. I am new to the NaturallyCurly world and I am still working on being acclimated. Anyway, I too am having a similar problem. I was using a really nice shampoo and conditioner that had Keratin in it and I was loving it. Several months back, I saw a commercial for Wen and thought I would give it a try. After about a month of using it, my hair started to fall out. I switched back to a lathering shampoo until about five months ago. I went and tried a Deva Cut for the first time and bought all of the products. As I am sure most would agree, I fell in love with the stuff. My hair felt and looked great. Now, the ball of hair in my shower nearly doubles in size from one

day to the next. I am not sure if it isn't clearing my scalp properly or it is causing more build up that usual but all I know is it has me concerned.

I also had some itching when I first started using the products. That had me concerned but it went away after I started to use the products regularly. I have been a Ouidad girl from about 20 years, give or take, and I just started to try new things. After this experience, I am not sure what to do. I am taking a break from Deva Curl for a little while and I will go back to my out routine and see if I notice a difference. I really think that is the only way to tell.

I'm not sure what it is worth but I was using shampoo and conditioner by OGX called Brazilian Keratin Therapy. It was designed for women who get Brazilian Keratin Treatments, something I fell victim too as well. At any rate, it works beautifully in conjunction with my Ouidad products. I'm also not sure if my hair type has anything to do with all of this. My curls are tight and spirally. a pencil fits inside them perfectly. My hair is very fine but I have a lot of it!"

327.   Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects. Indeed, in January, Defendant issued a public statement acknowledging the alleged defects but **refused** to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.[40]

## CLASS ACTION ALLEGATIONS

328.   Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

**Nationwide Class:** **All persons in the United States who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

329.   Additionally, Plaintiffs bring this action on behalf of themselves and members of the following Subclass:

**Consumer Fraud Multi-State Class**: **All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Texas, Washington and Wisconsin who, during the maximum period permitted by law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale (the "Consumer Fraud Multi-State Class").**

---

[40] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

330.     Plaintiff Carter also brings this action on behalf of herself and the members of the following Alabama Subclass:

**Alabama Subclass: All persons in Alabama who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

331.     Plaintiff Walsted also brings this action on behalf of herself and the members of the following Alaska Subclass:

**Alaska Subclass: All persons in Alaska who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

332.     Plaintiff Baker also brings this action on behalf of herself and the members of the following Arizona Subclass:

**Arizona Subclass: All persons in Arizona who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

333.     Plaintiff Hill also brings this action on behalf of herself and the members of the following Arkansas Subclass:

**Arkansas Subclass: All persons in Arkansas who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

334.     Plaintiff Cohen also brings this action on behalf of herself and the members of the following California Subclass:

**California Subclass: All persons in California who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

335.     Plaintiff Melamud also brings this action on behalf of herself and the members of the following Colorado Subclass:

**Colorado Subclass: All persons in Colorado who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

336.     Plaintiff Lazara also brings this action on behalf of herself and the members of the following Connecticut Subclass:

**Connecticut Subclass: All persons in Connecticut who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

337.     Plaintiff Perez also brings this action on behalf of herself and the members of the following Delaware Subclass:

**Delaware Subclass: All persons in Delaware who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

338.     Plaintiff Araya also brings this action on behalf of herself and the members of the following District of Columbia Subclass:

**District of Columbia Subclass: All persons in District of Columbia who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

339.     Plaintiff Mendez also brings this action on behalf of herself and the members of the following Florida Subclass:

**Florida Subclass: All persons in Florida who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

340.     Plaintiff Williams also brings this action on behalf of herself and the members of the following Georgia Subclass:

**Georgia Subclass: All persons in Georgia who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

341.     Plaintiff Christensen also brings this action on behalf of herself and the members of the following Hawaii Subclass:

**Hawaii Subclass:** **All persons in Hawaii who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

342.    Plaintiff Smith also brings this action on behalf of herself and the members of the following Idaho Subclass:

**Idaho Subclass:** **All persons in Idaho who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

343.    Plaintiff Martinez also brings this action on behalf of herself and the members of the following Illinois Subclass:

**Illinois Subclass:** **All persons in Illinois who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

344.    Plaintiff Temasagane also brings this action on behalf of herself and the members of the following Indiana Subclass:

**Indiana Subclass:** **All persons in Indiana who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

345.    Plaintiff Hanisch also brings this action on behalf of herself and the members of the following Iowa Subclass:

**Iowa Subclass:** **All persons in Iowa who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

346.    Plaintiff Deist also brings this action on behalf of herself and the members of the following Kansas Subclass:

**Kansas Subclass:** **All persons in Kansas who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

347.    Plaintiff Stewart also brings this action on behalf of herself and the members of the following Kentucky Subclass:

**Kentucky Subclass:** **All persons in Kentucky who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

348.    Plaintiff Mahmood also brings this action on behalf of herself and the members of

the following Louisiana Subclass:

**Louisiana Subclass:** **All persons in Louisiana who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

349.    Plaintiff Abdulahi also brings this action on behalf of herself and the members of

the following Maine Subclass:

**Maine Subclass:** **All persons in Maine who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

350.    Plaintiff Duvall also brings this action on behalf of herself and the members of the

following Maryland Subclass:

**Maryland Subclass:** **All persons in Maryland who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

351.    Plaintiff Law also brings this action on behalf of herself and the members of the

following Massachusetts Subclass:

**Massachusetts Subclass:** **All persons in Massachusetts who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

352.    Plaintiff Dubord also brings this action on behalf of herself and the members of

the following Michigan Subclass:

**Michigan Subclass:** **All persons in Michigan who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

353.    Plaintiff Taplin also brings this action on behalf of herself and the members of the following Minnesota Subclass:

**Minnesota Subclass: All persons in Minnesota who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

354.    Plaintiff Pace also brings this action on behalf of herself and the members of the following Mississippi Subclass:

**Mississippi Subclass: All persons in Mississippi who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

355.    Plaintiff Roush also brings this action on behalf of herself and the members of the following Missouri Subclass:

**Missouri Subclass: All persons in Missouri who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

356.    Plaintiff Lee also brings this action on behalf of herself and the members of the following Montana Subclass:

**Montana Subclass: All persons in Montana who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

357.    Plaintiff Mitchel also brings this action on behalf of herself and the members of the following Nebraska Subclass:

**Nebraska Subclass: All persons in Nebraska who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

358.    Plaintiff Cherry also brings this action on behalf of herself and the members of the following Nevada Subclass:

**Nevada Subclass: All persons in Nevada who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

359.    Plaintiff Dobe also brings this action on behalf of herself and the members of the following New Hampshire Subclass:

**New Hampshire Subclass:** All persons in New Hampshire who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.

360.    Plaintiff Giraldo also brings this action on behalf of herself and the members of the following New Jersey Subclass:

**New Jersey Subclass:** All persons in New Jersey who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.

361.    Plaintiff Talavera also brings this action on behalf of herself and the members of the following New Mexico Subclass:

**New Mexico Subclass:** All persons in New Mexico who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.

362.    Plaintiff House also brings this action on behalf of herself and the members of the following New York Subclass:

**New York Subclass:** All persons in New York who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.

363.    Plaintiff Krumroy also brings this action on behalf of herself and the members of the following North Carolina Subclass:

**North Carolina Subclass:** All persons in North Carolina who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.

364.    Plaintiff Pangle also brings this action on behalf of herself and the members of the following North Dakota Subclass:

**North Dakota Subclass: All persons in North Dakota who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

365.    Plaintiff Sutton also brings this action on behalf of herself and the members of the following Ohio Subclass:

**Ohio Subclass: All persons in Ohio who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

366.    Plaintiff Kenning also brings this action on behalf of herself and the members of the following Oklahoma Subclass:

**Oklahoma Subclass: All persons in Oklahoma who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

367.    Plaintiff Angelone also brings this action on behalf of herself and the members of the following Oregon Subclass:

**Oregon Subclass: All persons in Oregon who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

368.    Plaintiff Sanchez also brings this action on behalf of herself and the members of the following Pennsylvania Subclass:

**Pennsylvania Subclass: All persons in Pennsylvania who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

369.    Plaintiff Swilling also brings this action on behalf of herself and the members of the following Rhode Island Subclass:

**Rhode Island Subclass: All persons in Rhode Island who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

370.    Plaintiff Musser also brings this action on behalf of herself and the members of the following South Carolina Subclass:

**South Carolina Subclass: All persons in South Carolina who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

371.    Plaintiff Sweeney also brings this action on behalf of herself and the members of the following South Dakota Subclass:

**South Dakota Subclass: All persons in South Dakota who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

372.    Plaintiff Morgan also brings this action on behalf of herself and the members of the following Tennessee Subclass:

**Tennessee Subclass: All persons in Tennessee who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

373.    Plaintiff Zuno also brings this action on behalf of herself and the members of the following Texas Subclass:

**Texas Subclass: All persons in Texas who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

374.    Plaintiff Cardenas also brings this action on behalf of herself and the members of the following Utah Subclass:

**Utah Subclass: All persons in Utah who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

375.    Plaintiff Reeves also brings this action on behalf of herself and the members of the following Vermont Subclass:

**Vermont Subclass: All persons in Vermont who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

376.    Plaintiff Kolber also brings this action on behalf of herself and the members of the following Virginia Subclass:

**Virginia Subclass: All persons in Virginia who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

377.    Plaintiff Barlow also brings this action on behalf of herself and the members of the following Washington Subclass:

**Washington Subclass: All persons in Washington who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

378.    Plaintiff Ballard also brings this action on behalf of herself and the members of the following West Virginia Subclass:

**West Virginia Subclass: All persons in West Virginia who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

379.    Plaintiff Corcoran also brings this action on behalf of herself and the members of the following Wisconsin Subclass:

**Wisconsin Subclass: All persons in Wisconsin who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

380.    Plaintiff Romaine-Guiliano also brings this action on behalf of herself and the members of the following Wyoming Subclass:

**Wyoming Subclass: All persons in Wyoming who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

381.   Specifically excluded from these definitions are (1) any and all persons who purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

382.   As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiffs.

383.   Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

384.   <u>Numerosity</u>: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in excess of 150,000. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

385.   <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that contained a significantly lesser amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant engaged in a systematic fraudulent behavior, that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

386.   <u>Commonality</u>: Plaintiffs have numerous questions of law and fact common to themselves and Class Members that predominate over any individualized questions. These common legal and factual issues include:

a.     Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

b.     Whether and when Defendant had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

c.     Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

d.     Whether Defendant's conduct violated the applicable state consumer fraud claims alleged herein;

e.     Whether Defendant's conduct constituted a breach of applicable warranties;

f.     Whether Defendant's acts and omissions make it liable to Plaintiffs and Class Members for negligence and strict products liability;

g.     Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class and Subclass members;

h.     Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

i.     Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

j.      Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class and Subclass have suffered an ascertainable loss of monies and/or property and/or value; and

k.      Whether Plaintiffs and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

387.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

388.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

389.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## COUNT 1

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of The Nationwide Class)

390.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

391.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

392.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

393.    Plaintiffs purchased Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

394.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

395.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

396.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class and Subclass members and Defendant.

397.    Defendant's written affirmations of fact, promises and/or descriptions as alleged––including promises that the Products promote healthy hair, are "free of harsh ingredients," "made

with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," and that they give "your curls what they need and nothing they don't,"[41] — are each a "written warranty." The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

398.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[42] The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

399.    Further, Defendant provided Plaintiffs and the other Nationwide Class members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

400.    As a part of the implied warranty of merchantability, Defendant warranted to Plaintiffs and Class members that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

---

[41] https://www.devacurl.com/us/curl-101/product-philosophy https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary
[42] https://www.devacurl.com/us/faq#shipping

401.    Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

402.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiffs and the other Nationwide Class members, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiffs and the Nationwide Class members. Thus, Defendant's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

403.    Plaintiffs and each of the other Nationwide Class members have had sufficient direct dealings with Defendant to establish privity of contract.

404.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers such as Ulta Beauty and Amazon were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

405.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

406.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

407.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

408.    While notice is not required (for the reasons set forth above), on February 7, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

409.    Defendant's breaches of warranty have caused Plaintiffs and the other Nationwide Class members to suffer injuries, paying for defective Products, and entering into transactions

they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

410.    Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Nationwide Class members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Nationwide Class members in connection with the commencement and prosecution of this action.

## COUNT 2

## BREACH OF EXPRESS WARRANTY
### (On Behalf of The Nationwide Class)

411.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege paragraphs 1-389, as if fully included herein.

412.    Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

413.    Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."[43]

---

[43] https://www.devacurl.com/us/curl-101/product-philosophy

414.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[44]

415.    Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

416.    Defendant's representations listed in Paragraphs 413 and 414 above constituted part of the basis of the bargain between Defendant and Plaintiffs (and Class Members).

417.    Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

418.    Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

419.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

420.    While Defendant expressly disavows all warranties or representations, this disavowal is limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website.[45] None of the Products at issue in this case (including those purchased by the Plaintiffs) were products "ordered or provided via the [Defendant's] website,"

---

[44] https://www.devacurl.com/us/faq#shipping
[45] https://www.devacurl.com/us/terms-conditions

and all persons who purchased the Products from Defendant's website are expressly excluded from the putative Class and Subclass.

421.    Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

422.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.[46] Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

423.    While notice is not required (for the reasons set forth above), on February 7, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

424.    As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and Class Members have been damaged because they did not receive the

---

[46] https://www.devacurl.com/us/deva-community-statement

products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

## COUNT 3

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of The Nationwide Class)

425.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege paragraphs 1-389, as if fully included herein.

426.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314 has been adopted in New York, N.Y. UCC Law §§ 2-314 and 2A-212, and in 35 other states.

427.    As set forth above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions.

428.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

429.    Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

430.    By placing such products into the stream of commerce, and by operation of law N.Y. UCC Law §§ 2-314 and 2A-212, Defendant impliedly warranted to Plaintiffs and Class members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety

of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

431.    Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

432.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

433.    Defendant misled consumers into believing the Products were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." Defendant took advantage of Plaintiffs' and the Classes' trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

434.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Classes, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

435.    Plaintiffs and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiffs and the Classes also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation.

436.    Plaintiffs and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

437.    Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

438.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT 4

## UNJUST ENRICHMENT
**(On Behalf of The Nationwide Class, and in the Alternative to Counts 1-3)**

439.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege paragraphs 1-389, as if fully included herein.

440.    According to Defendant's website, New York law applies to all claims.[47]

441.    Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

442.    Defendant has knowledge of such benefits.

---

[47] https://www.devacurl.com/us/terms-conditions

443.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs and the Class Members therefore. Defendant failed to adequately compensate the Plaintiffs for the benefits conferred by providing the No-Poo Products without those products having the characteristics and benefits promised.

444.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

445.    This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation in Defendant's Products.

446.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT 5

## NEGLIGENCE – FAILURE TO WARN
### (On Behalf of The Nationwide Class)

447.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all paragraphs 1-389, as if fully included herein.

448.    According to Defendant's website, New York law applies to all claims.[48]

449.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiffs and the Class.

450.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

451.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

452.    Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use.

453.    After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

---

[48] *Id.*

454.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

455.    Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users o f the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

456.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

457.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding and/or scalp irritation, Plaintiffs and the Class have suffered damages as set forth herein.

## COUNT 6

## NEGLIGENCE – FAILURE TO TEST
### (On Behalf of The Nationwide Class)

458.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege paragraphs 1-389, as if fully included herein.

459.    According to Defendant's website, New York law applies to all claims.[49]

---

[49] *Id.*

460.    Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiffs and the Class.

461.    Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

462.    Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

463.    Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendant knew or should have known the Products could cause substantial hair loss and scalp irritation.

464.    Defendant knew or reasonably should have known that Class members such as Plaintiffs would suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

465.    By reason of the foregoing, Plaintiffs and the Class experienced and/or are at risk of experiencing financial damage and injury.

466.    As a direct and proximate result of Defendant's failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by the Defendant, Plaintiffs and the Class have suffered damages as described above.

## COUNT 7

## VIOLATIONS OF THE ALABAMA CONSUMER PROTECTION ACT,
## Ala. Code §§ 8-19-1, *et seq*.
### (On behalf of the Alabama Subclass)

467.    The Alabama Plaintiffs identified above, individually and on behalf of the Alaska Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

468.    Defendant is a "person" as defined by Ala. Code § 8-19-3(5).

469.    Plaintiffs and the other Alabama Subclass members are "consumers" as defined by Ala. Code § 8-19-3(2).

470.    Defendant received notice pursuant to Ala. Code § 8-19-10(e) concerning its wrongful conduct as alleged herein by Plaintiffs and Alabama Subclass members.

471.    Defendant advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

472.    Defendant engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, by, among other things, representing that Defendant's Products have, characteristics, ingredients, uses, benefits, or qualities that they do not have, in violation of § 8-19-5(5).

473.    Defendant's representations and omissions were material because they were likely to deceive ordinary, reasonable consumers.

474.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

475.    Defendant's deceptive acts and practices caused substantial injury to Plaintiffs and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

476.    Plaintiffs and the Alabama Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

## COUNT 8

### VIOLATIONS OF THE ALASKA CONSUMER PROTECTION ACT, Alaska Stat. §§ 45.50.471, *et seq.* (On behalf of the Alaska Subclass)

477.    The Alaska Plaintiffs identified above, individually and on behalf of the Alaska Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

478.    Defendant advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

479.    Alaska Class members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

480.    Defendant received notice pursuant to Alaska Stat. § 45.50.535 concerning its wrongful conduct as alleged herein by Plaintiffs and Alaska Subclass members.

481.    Defendant engaged in unfair or deceptive acts and practices in the conduct of trade or commerce, in violation Alaska Stat. § 45.50.471, including:

a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.  Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.  Making affirmative public representations about alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.  Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

482.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

483.  Defendant recklessly disregarded Plaintiffs and Alaska Class members' rights.

484.  Defendant's knowledge of consumer complaints regarding Defendant's Products put it on notice that Defendant's Products were not as they advertised and defective.

485.  As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Alaska Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain, and suffering and treating physical damages related to the use of Defendant's Products.

486.  Plaintiffs and the Alaska Class seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages in the amount of $500, punitive damages, reasonable attorneys' fees and costs and expenses, injunctive and declaratory relief, and any other relief that is necessary and proper.

## COUNT 9

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*
### (On behalf of the Arizona Subclass)

487. The Arizona Plaintiffs identified above, individually and on behalf of the Arizona Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

488. Defendant is a "person" as defined by Ariz. Rev. Stat. Ann. § 44-1521(6).

489. Defendant advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

490. Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521(5)) in violation of Ariz. Rev. Stat. Ann. § 44-1522(A).

491. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

492. Defendant intended to mislead Plaintiffs and Arizona Class members and induce them to rely on its misrepresentations and omissions.

493. Defendant acted intentionally, knowingly, and maliciously to violate the Arizona Consumer Fraud Act, and recklessly disregarded Plaintiffs and Arizona Subclass members' rights. Defendant's knowledge of Defendant's Products' abilities and potential health and safety risks including numerous consumer complaints put it on notice that Defendant's Products were not as it advertised.

494. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses

of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating damages caused by Defendant's Products.

495.    Plaintiffs and Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive and declaratory relief; and reasonable attorneys' fees and costs.

## COUNT 10

### VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, Ark. Code Ann. §§ 4-88-101, *et seq.* (On behalf of the Arkansas Subclass)

496.    The Arkansas Plaintiffs identified above, individually and on behalf of the Arkansas Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

497.    Defendant is a "person" as defined by Ark. Code Ann. § 4-88-102(5).

498.    Defendant's Products and services are "goods" and "services" as defined by Ark. Code Ann. §§ 4-88-102(4) and (7).

499.    Defendant advertised, offered, or sold goods or services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

500.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

501.    Defendant engaged in acts of deception and false pretense in connection with the sale and advertisement of services in violation of Ark. Code Ann. § 4-88-1-8(1) and concealment, suppression and omission of material facts, with intent that others rely upon the concealment,

suppression or omission in violation of Ark. Code Ann. § 4-88-1-8(2), and engaged in deceptive and unconscionable trade practices defined in Ark. Code Ann. § 4-88-107.

502.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

503.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts or practices and Plaintiffs and Arkansas Subclass members' reliance thereon, Plaintiffs and Arkansas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products by relying on Defendant's misrepresentations and false statements concerning the alleged beneficial properties of the Products.

504.    Plaintiffs and the Arkansas Subclass members seek all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 11

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,
### Cal. Civ. Code §§ 1750, *et seq.*
### (On behalf of the California Subclass)

505.    The California Plaintiffs identified above, individually and on behalf of the California Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

506.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against

unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

507.    Defendant is a "person" as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has provided "services" as defined by Cal. Civ. Code §§ 1761(b) & 1770.

508.    Plaintiffs and California Subclass members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) & 1770 and have engaged in a "transaction" as defined by Cal. Civ. Code §§ 1761(e) & 1770.

509.    Defendant's unlawful conduct resulted in the sales of products and services to Plaintiffs and the California Subclass Members in violation of Cal. Civ. Code § 1770, including:

    a.    Representing that goods or services have characteristics that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

    c.    Advertising goods or services with intent not to sell them as advertised; and

    d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

510.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

511.    Had Defendant disclosed to Plaintiffs and California Subclass Members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing,

hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

512.    As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiffs and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage caused by the use of Defendant's Products.

513.    Plaintiffs sent notice of their intention to seek damages via a letter dated February 7, 2020, in compliance with Cal. Civ. Code § 1782(a). Any further notice would be futile because Defendant has yet to offer relief to the California Subclass, despite being on notice of its unfair, deceptive, and fraudulent conduct.

514.    Plaintiffs, individually and on behalf of the other California Subclass Members, seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, declaratory relief, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

## COUNT 12

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On behalf of the California Subclass)

515.     The California Plaintiffs identified above, individually and on behalf of the California Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

516.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

517.     Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

518.     Defendant's "unfair" acts and practices include:

a.   Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.   Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

519.    Defendant engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and California common law.

520.    Defendant's deceptive acts and practices include:

a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.    Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

521.    Defendant violated UCL § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products. As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically their failure to inform customers of the health and safety risks inherent in Defendant's Products, violated Cal. Civ. Code §§ 1750, *et seq.*, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the

Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

522.    Defendant violated UCL § 17200's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Defendant's Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair loss, excessive shedding, and scalp irritation) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

523.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiffs and California Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

524.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, California Subclass Members into

purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

525.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

526.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

527.    Defendant recklessly disregarded Plaintiffs and California Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

528.    Plaintiffs and California Subclass Members seek injunctive and declaratory relief, any other appropriate equitable relief, and an award of reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

## COUNT 13

### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On behalf of the California Subclass)

529.    The California Plaintiffs identified above, individually and on behalf of the California Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

530.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class Members and the public. As described, Defendant misrepresented

Defendant's Products, concealed Defendant's Products' defects, concealed the health and safety risk with use of Defendant's Products, and also concealed and misrepresented the true nature of Defendant's Products.

531.    By their actions, Defendant disseminated uniform advertising regarding the Defendant's Products throughout the country, including in California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

532.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of Defendant's Products. Defendant failed to instigate a public information campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

533.    Defendant continued to misrepresent to consumers that Defendant's Products were capable of certain benefits without disclosing health and safety risks. Had Defendant disclosed those issues, rather than falsely advertising Defendant's Products' abilities, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

534.    In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of California law. Plaintiffs and other California Subclass Members based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant, attributable to Products sold in those false and misleading advertisements, amount to hundreds of

millions of dollars. Plaintiffs and California Subclass Members were injured in fact and lost money and property as a result.

535.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code §§ 17500, *et seq*.

536.    As a result of Defendant's wrongful conduct, Plaintiffs and the California Subclass Members lost money. Plaintiffs and the California Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

537.    Plaintiffs and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; injunctive and declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

## COUNT 14

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT, Colo. Rev. Stat. §§ 6-1-101, *et seq*. (On behalf of the Colorado Subclass)

538.    The Colorado Plaintiffs identified above, individually and on behalf of the Colorado Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

539.    Defendant is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

540.    Defendant engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

541.    The Colorado Plaintiffs and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Defendant or successors in interest to actual consumers.

542.    Defendant engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1)(g), by, among other things, representing that Defendant's Products are of a particular standard, quality, or grade, while it knew or should know that they are of another.

543.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

544.    As a direct and proximate result of Defendant's deceptive trade practices, Colorado Subclass members suffered injuries to their legally protected interests.

545.    The Colorado Plaintiffs and Colorado Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendant's bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 15

### VIOLATIONS OF THE CONNECTICUT TRADE PRACTICES ACT,
### Conn. Gen. Stat. §§ 42-110g, *et seq.*
### (On behalf of the Connecticut Subclass)

546.    The Connecticut Plaintiffs identified above, individually and on behalf of the Connecticut Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

547.    Defendant is a "person" as defined by Conn. Gen. Stat. § 42-110a(3).

548.    Defendant is engaged in "trade" or "commerce" as those terms are defined by Conn. Gen. Stat. § 42-110a(4).

549.    Plaintiffs has sent notice to the Attorney General and Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c). Plaintiffs will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

550.    Defendant advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

551.    Defendant engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of the Conn. Gen. Stat. § 42-110b, by misrepresenting Defendant's Products, concealing Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products.

552.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Connecticut Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

553.    Defendant's deceptive acts and practices caused substantial, ascertainable injury to Plaintiffs and Connecticut Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

554.    Defendant's violations of Connecticut law were done with reckless indifference to the Plaintiffs and the Connecticut Subclass or was with an intentional or wanton violation of those rights.

555.    Plaintiffs requests damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

## COUNT 16

### VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
### Del. Code Ann. Tit. 6, §§ 2511, *et seq.*
### (On behalf of the Delaware Subclass)

556.    The Delaware Plaintiffs identified above, individually and on behalf of the Delaware Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

557.    DevaCurl is a "person" that is involved in the "sale" of "merchandise," as defined by 6 Del. Code § 2511(7), (8), and (6).

558.    DevaCurl advertised, offered, or sold goods or services in Delaware and engaged in trade or commerce directly or indirectly affecting the people of Delaware.

559.    DevaCurl used and employed deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of merchandise, in violation of 6 Del. Code § 2513(a), including:

    a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.   Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

560.   DevaCurl's representations and omissions were material because they were likely to deceive reasonable consumers about the Products' properties and abilities and the known health and safety risks.

561.   DevaCurl acted intentionally, knowingly, and maliciously to violate Delaware's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and Delaware Subclass members' rights. The numerous prior FDA complaints of hair loss and scalp irritation, the hundreds of complaints posted on social media sites like Facebook, and the numerous postings of social media influencers put DevaCurl on notice that its Products' properties and abilities and the known health and safety risks were not accurately represented.

562.   Had DevaCurl disclosed to Plaintiffs and the Delaware Subclass members the true nature and character of its Products, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

563.   In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of Delaware law. Plaintiffs and other Delaware Subclass Members based

their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant, attributable to Products sold in those false and misleading advertisements, amount to millions of dollars.

564.    Plaintiffs and the Delaware Subclass members acted reasonably in relying on DevaCurl's misrepresentations and omissions, the truth of which they could not have discovered.

565.    DevaCurl's unlawful trade practices were gross, oppressive, and aggravated, and DevaCurl breached the trust of Plaintiffs and the Delaware Subclass members.

566.    As a direct and proximate result of DevaCurl's unlawful acts and practices, Plaintiffs and Delaware Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

567.    Plaintiffs and Delaware Subclass members seek all monetary and nonmonetary relief allowed by law, including damages under 6 Del. Code § 2525 for injury resulting from the direct and natural consequences of DevaCurl's unlawful conduct; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 17

### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. § 501.201 et seq.
### (On behalf of the Florida Subclass)

568.    The Florida Plaintiffs identified above, individually and on behalf of the Florida Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

569.    The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. § 501.201 et seq., prohibits the use of unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

570.    Defendant's conduct described herein constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

571.    Defendant intended that Plaintiff and each of the members of the Florida Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

572.    Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

573.    Defendant's practices, acts, and course of conduct in marketing and selling the Product are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the Florida Subclass would not have purchased the Products had they known the truth about them.

574.    Plaintiff and members of the Florida Subclass have been directly and proximately damaged by Defendant's actions.

575.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Florida Subclass have sustained damages in an amount to be proven at trial.

576.    In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT 18

## VIOLATIONS OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,
### Ga. Code Ann. §§ 10-1-390, *et seq.*
### (On behalf of the Georgia Subclass)

577.    The Georgia Plaintiffs identified above, individually and on behalf of the Georgia Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

578.    The Georgia Plaintiffs and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

579.    Defendant received notice pursuant to Ga. Code Ann. § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiffs and Georgia Subclass members

580.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. § 10-1-372(a)(5) by, among other things, representing that Defendant's Products have characteristics, ingredients, uses, or benefits that they do not have. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

581.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

582.    Plaintiffs and Georgia Subclass members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

**COUNT 19**

**VIOLATIONS OF THE HAWAII UNFAIR PRACTICES AND
UNFAIR COMPETITION ACT,
Haw. Rev. Stat. §§ 480-1, *et seq.*
(On Behalf of the Hawaii Subclass)**

583.   The Hawaii Plaintiffs identified above, individually and on behalf of the Hawaii Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

584.   Plaintiffs and Hawaii Subclass members are "consumers" as defined by Haw. Rev. Stat. § 480-1.

585.   Plaintiffs, the Hawaii Subclass members, and DevaCurl are "persons" as defined by Haw. Rev. Stat. § 480-1.

586.   DevaCurl advertised, offered, or sold goods or services in Hawaii and engaged in trade or commerce directly or indirectly affecting the people of Hawaii.

587.   DevaCurl engaged in unfair or deceptive acts or practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the goods and services purchased by Hawaii Subclass members in violation of Haw. Rev. Stat. § 480-2(a), including:

a.   Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c. Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d. Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

588. DevaCurl's representations and omissions were material because they were likely to deceive reasonable consumers about the Products' properties and abilities and the known health and safety risks.

589. DevaCurl intended to mislead Plaintiffs and Hawaii Subclass members and to induce them to rely on its misrepresentations and omissions.

590. The foregoing unlawful and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous.

591. DevaCurl acted intentionally, knowingly, and maliciously to violate Hawaii's Unfair Practices and Unfair Competition Act, and recklessly disregarded Plaintiffs' and Hawaii Subclass members' rights. The numerous prior FDA complaints of hair loss and scalp irritation, the hundreds of complaints posted on social media sites like Facebook, and the numerous postings of social media influencers put DevaCurl on notice that its Products' properties and abilities and the known health and safety risks were not accurately represented.

592. Had DevaCurl disclosed to Plaintiffs and the Hawaii Subclass members the true nature and character of its Products, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

593. In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and

misleading in violation of Hawaii law. Plaintiffs and other Hawaii Subclass Members based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant, attributable to Products sold in those false and misleading advertisements, amount to millions of dollars.

594.    Plaintiffs and the Hawaii Subclass members acted reasonably in relying on DevaCurl's misrepresentations and omissions, the truth of which they could not have discovered.

595.    As a direct and proximate result of DevaCurl's unlawful acts and practices, Plaintiffs and Hawaii Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

596.    Plaintiffs and Hawaii Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages, benefit of the bargain damages, treble damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 20

## VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT,
### Idaho Code §§ 48-601, *et seq.*
### (On behalf of the Idaho Subclass)

597.    The Idaho Plaintiffs identified above, individually and on behalf of the Idaho Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

598.    Defendant is a "person" as defined by Idaho Code § 48-602(1).

599.    Defendant's conduct as alleged herein pertained to "goods" and "services" as defined by Idaho Code §§ 48-602(6) and (7).

600.    Defendant advertised, offered, or sold goods or services in Idaho and engaged in trade or commerce directly or indirectly affecting the people of Idaho.

601.    Defendant engaged in unfair and deceptive acts or practices, and unconscionable acts and practices, in the conduct of trade and commerce with respect to the sale and advertisement of goods and services, in violation of Idaho Code § 48-603(5) by, among other things, representing that Defendant's Products have characteristics, ingredients, uses, or benefits that they do not have

602.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

603.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

604.    The Idaho Plaintiffs and Idaho Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT 21

### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS §§ 505, *et seq.*
**(On behalf of the Illinois Subclass)**

605.    The Illinois Plaintiffs identified above, individually and on behalf of the Illinois Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

606.    Defendant constitute a "person" as defined by 815 ILCS §§ 505/1(c).

607.    Plaintiffs and Illinois Class members are "consumers" as defined by 815 ILCS §§ 505/1(e).

608.    Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). Defendant's conduct is described in full detail above.

609.    Defendant's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 ILCS § 505/2.

610.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

611.    Defendant intended to mislead Plaintiffs and Illinois Class members and induce them to rely on their misrepresentations and omissions.

612.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

613.    Defendant acted intentionally, knowingly, and maliciously to violate Illinois' Consumer Fraud Act, and recklessly disregarded Plaintiffs and Illinois Class members' rights. Defendant's knowledge of Defendant's Products' abilities and health and safety risks from their use put them on notice that Defendant's Products were not as they advertised.

614.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

615.    Plaintiffs and Illinois Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

## COUNT 22

### VIOLATIONS OF THE ILLINOIS UNIFORM
### DECEPTIVE TRADE PRACTICES ACT
### CS §§ 510/2, *et seq.*
### (On behalf of the Illinois Subclass)

616.    The Illinois Plaintiffs identified above, individually and on behalf of the Illinois Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

617.    Defendant constitute a "person" as defined by 815 ILCS §§ 510/1(5).

618.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

   a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false curative health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

   b.    Marketing and selling Defendant's Products that relied upon false curative health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

   c.    Making affirmative public representations about curative benefits of Defendant's Products while, at the same time, not ensuring that consumer health and safety; and

   d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

619.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

620.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

621.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating damages caused by the Products.

622.    Plaintiffs and Illinois Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT 23

## VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT,
### Ind. Code §§ 24-5-0.5-1, *et seq.*
### (On behalf of the Indiana Subclass)

623.    The Indiana Plaintiffs identified above, individually and on behalf of the Indiana Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

624.    Defendant is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

625.    Defendant is a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3) because it regularly engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(3)(A).

626.    Defendant engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

627.    Defendant's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

628.    The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

629.    Defendant's acts and practices were "abusive" for numerous reasons (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Defendant; (d) because Defendant took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information.

630.    Defendant also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b) by (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have and

(b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

631.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

632.    Defendant received notice pursuant to Ind. Code § 24-5-0.5-5(a) concerning its wrongful conduct as alleged herein by Plaintiffs and Indiana Subclass members. Defendant's conduct includes incurable deceptive acts that Defendant engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

633.    As a direct and proximate result of Defendant uncured or incurable unfair, abusive, and deceptive acts or practices, the Plaintiffs and Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

634.    Defendant's violations present a continuing risk to Plaintiffs and Indiana Subclass members as well as to the general public.

635.    Plaintiffs and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

**COUNT 24**

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT,**
**Kan. Stat. Ann §§ 50-623, *et seq.***
**(On behalf of the Kansas Subclass)**

636.    The Kansas Plaintiffs identified above, individually and on behalf of the Kansas Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

637.    Kan. Stat. Ann. §§ 50-623, *et seq.*, is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

638.    Plaintiffs and Kansas Subclass members are "consumers" as defined by Kan. Stat. Ann. § 50-624(b).

639.    The acts and practices described herein are "consumer transactions," as defined by Kan. Stat. Ann. § 50-624(c).

640.    Defendant is a "supplier" as defined by Kan. Stat. Ann. § 50-624(l).

641.    Defendant advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

642.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

643.    Defendant engaged in deceptive acts and practices when it advertised that its Products were of one quality and turned out to be of another. *See* Kan. Stat. Ann. § 50-626(b)(1)(D). Defendant also engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Kan. Stat. Ann. § 50-627 by misrepresenting Defendant's Products, concealing Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products, knowingly taking advantage of the inability of Plaintiffs and the

Kansas Subclass to reasonably protect their interests, due to their lack of knowledge (*see* Kan. Stat. Ann. § 50-627(b)(1)); and requiring Plaintiffs and the Kansas Subclass to enter into a consumer transaction on terms that Defendant knew were substantially one-sided in favor of Defendant (*see* Kan. Stat. Ann. § 50-627(b)(5)).

644.    The Plaintiffs and the Kansas Subclass had unequal bargaining power with respect to their purchase and/or use of Defendant's Products because of Defendant's omissions and misrepresentations.

645.    The above unfair, deceptive, and unconscionable practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kansas Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

646.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

647.    Plaintiffs and Kansas Subclass members seek all monetary and non-monetary relief allowed by law, including civil penalties or actual damages (whichever is greater), under Kan. Stat. Ann. §§ 50-634 and 50-636; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT 25**

**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT,**
**Ky. Rev. Stat. Ann. §§ 367.110, *et seq*.**
**(On behalf of the Kentucky Subclass)**

648.    The Kentucky Plaintiffs identified above, individually and on behalf of the Kentucky Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

649.    Defendant is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

650.    Defendant advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

651.    Defendant engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, as described herein.

652.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

653.    The Kentucky Plaintiffs and Kentucky Subclass members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Defendant's unlawful acts and practices.

654.    The above unlawful acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

655.    As a direct and proximate result of Defendant's deceptive acts and practices, the Kentucky Plaintiffs and Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products and increased time and expense in dealing with treating damages from the use of Defendant's Products.

656.    The Kentucky Plaintiffs and Kentucky Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 26

### VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,
### La. Stat. Ann. §§ 51:1401, *et seq*.
### (On behalf of the Louisiana Subclass)

657.    The Louisiana Plaintiffs identified above, individually and on behalf of the Louisiana Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

658.    The Louisiana Plaintiffs and the Louisiana Subclass members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

659.    Plaintiffs and Louisiana Subclass members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

660.    Defendant engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

661.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

662.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

663.    Defendant's unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Kentucky Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

664.    As a direct and proximate result of Defendant's deceptive acts and practices, the Kentucky Plaintiffs and Kentucky Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

665.    Plaintiffs and Louisiana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; treble damages for Defendant knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

**COUNT 27**

**VIOLATIONS OF THE MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**Me. Rev. Stat. Ann. 10 §§ 1212, *et seq.***
**(On behalf of the Maine Subclass)**

666.    The Maine Plaintiffs identified above, individually and on behalf of the Maine Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

667.    Defendant is a "person" as defined by Me. Rev. Stat. tit. 10 § 1211(5).

668.    Defendant advertised, offered, or sold goods or services in Maine and engaged in trade or commerce directly or indirectly affecting the people of Maine.

669.    Defendant engaged in deceptive trade practices in the conduct of its business, in violation of Me. Rev. Stat. tit. 10 § 1212 by making misrepresentations and false statements concerning Defendant's Products having characteristics, ingredients, uses, or benefits that they do not have; representing that goods or services are of a particular standard, quality, or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in other conduct that creates a likelihood of confusion or misunderstanding.

670.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

671.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

672.    The Maine Subclass members are likely to be damaged by Defendant's ongoing deceptive trade practices and increased time and expense in dealing with treating damages from the use of Defendant's Products.

673.    The Maine Plaintiffs and the Maine Subclass members seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive or other equitable relief, and attorneys' fees and costs.

**COUNT 28**

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**Md. Code Ann., Com. Law §§ 13-301, et seq.**
**(On behalf of the Maryland Subclass)**

674.    The Maryland Plaintiffs identified above, individually and on behalf of the Maryland Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

675.    Defendant constitutes a person as defined by Md. Comm. Code § 13-101(h).

676.    Defendant's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

677.    Maryland class members are "consumers" as defined by Md. Comm. Code § 13-

678.    101(c).

679.    Defendant advertises, offers, or sell "consumer goods" or "consumer services" as defined by Md. Comm. Code § 13-101(d).

680.    Defendant advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

681.    Defendant engaged in unfair and deceptive trade practices, in violation of Md.

682.    Comm. Code § 13-301, including: (a) false or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c) representing that consumer goods or services are of a particular standard, quality, or grade that they are not; (d) failing to state a material fact where the failure deceives or tends to deceive; (e) advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered; (f) deception, fraud, false pretense, false premise, misrepresentation, or

knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

683.    Defendant engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services or with respect to the extension of consumer credit, in violation of Md. Comm. Code § 13-303.

684.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

685.    Had Defendant disclosed to Plaintiffs and California Subclass Members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

686.    Defendant recklessly disregarded Plaintiffs and Maryland Class members' rights.

687.    Defendant's knowledge of the Defendant's Products' abilities and health and safety risks put them on notice that Defendant's Products were not as they advertised.

688.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Maryland Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

689.     Plaintiffs and Maryland Class members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, declaratory relief, and attorneys' fees and costs.

## COUNT 29

## VIOLATIONS OF THE DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW
### Mass. Gen. Laws ch. 93a, § 1, *et seq.*
### (On behalf of the X Subclass)

690.     The Massachusetts Plaintiffs identified above, individually and on behalf of the Massachusetts Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

691.     Defendant, the Massachusetts Plaintiffs, and the Massachusetts Subclass are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

692.     Defendant engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

693.     Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

694.     Defendant misrepresented Defendant's Products, concealed Defendant's Products' defects, concealed the health and safety risk with use of Defendant's Products, and also concealed and misrepresented the true nature of Defendant's Products.

695.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Massachusetts Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

696.    As a direct and proximate result of Defendant's violations of the Massachusetts Act, the Massachusetts Plaintiffs and the Massachusetts Subclass have suffered injury-in-fact and/or actual damage.

697.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and the Massachusetts Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiffs and each Massachusetts Class member.

698.    On February 7, 2020, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Defendant failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which the Massachusetts Plaintiffs and the Massachusetts Class are entitled.

## COUNT 30

## VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### Mich. Comp. Laws §§ 445.903, *et seq.*
### (On behalf of the Michigan Subclass)

699.    The Michigan Plaintiffs identified above, individually and on behalf of the Michigan Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

700.    Defendant and Michigan Class members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

701.    Defendant advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

702.    Defendant engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including: (a) representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

703.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

704.    Defendant induced the Plaintiffs and Michigan Class members to rely on its misrepresentations and omissions.

705.    Defendant recklessly disregarded Plaintiffs and Michigan Class members' rights.

706.    Defendant's knowledge of Defendant's Products' abilities and health and safety risks put them on notice that Defendant's Products were not as they advertised.

707.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Michigan Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage caused by them.

708.     Plaintiffs and Michigan Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, declaratory relief, and any other relief that is just and proper.

## COUNT 31

### VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT
### Minn. Stat. §§ 325F.68, et seq. and Minn. Stat. §§ 8.31, *et seq.*
### (On behalf of the Minnesota Subclass)

709.     The Minnesota Plaintiffs identified above, individually and on behalf of the Minnesota Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

710.     Defendant, Plaintiffs, and members of the Minnesota class are each a "person" as defined by Minn. Stat. § 325F.68(3).

711.     Defendant's goods, services, commodities, and intangibles (specifically, its Defendant's Products) are "merchandise" as defined by Minn. Stat. § 325F.68(2).

712.     Defendant engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

713.     Defendant engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

714.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

715.    Defendant's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used Defendant's Products.

716.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages caused by the Products.

717.    Plaintiffs and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including damages, declaratory or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT 32

## VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### Minn. Stat. §§ 325D.43, *et seq.*
### (On behalf of the Minnesota Subclass)

718.    The Minnesota Plaintiffs identified above, individually and on behalf of the Minnesota Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

719.    By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendant violated Minn. Stat. § 325D.44, including the following provisions: (a) representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); (b) representing that goods and services are of a particular standard or quality

when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); (c) advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and (d) engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

720.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

721.    Had Defendant disclosed to Plaintiffs and Minnesota Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the Minnesota Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

722.    Defendant's knowledge of Defendant's Products' abilities and health and safety risks put them on notice that Defendant's Products were not as they advertised.

723.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Minnesota Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including

from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages they caused.

724.    Plaintiffs and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including declaratory relief and attorneys' fees and costs.

### COUNT 33

### VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT,
### Miss. Code Ann. §§ 75-24-1, *et seq.*
### (On behalf of the Mississippi Subclass)

725.    The Mississippi Plaintiffs identified above, individually and on behalf of the Mississippi Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

726.    Defendant is a "person," as defined by Miss. Code Ann. § 75-24-3.

727.    Defendant advertised, offered, or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code Ann. § 75-24-3.

728.    Prior to filing suit, Plaintiffs made reasonable attempts to resolve Plaintiffs' claims via informal dispute resolution processes; however, such processes were unsuccessful.

729.    The above-described conduct violated Miss. Code Ann. § 75-24-5(2) by making misrepresentations and false statements concerning the characteristics, ingredients, uses, or benefits of Defendant's Products, representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising goods or services with intent not to sell them as advertised.

730.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

731.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

732.    Defendant's violations present a continuing risk to the Mississippi Plaintiffs and Mississippi Subclass members as well as to the general public as, *inter alia*, its omissions and misrepresentations have not been corrected.

733.    The Mississippi Plaintiffs and Mississippi Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution and other relief under Miss. Code Ann. § 75-24-11, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT 34

### VIOLATIONS OF THE MISSOURI MERCHANDISE PRACTICES ACT
### Mo. Rev. Stat. §§ 407.010, *et seq.*
### (On behalf of the Missouri Subclass)

734.    The Missouri Plaintiffs identified above, individually and on behalf of the Missouri Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

735.    Defendant is each a "person" as defined by Mo. Rev. Stat. § 407.010(5).

736.    Defendant advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

737.    Plaintiffs and Missouri Class members purchased or leased goods or services primarily for personal, family, or household purposes.

738.    Defendant engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

739.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

740.    Defendant recklessly disregarded Plaintiffs and Missouri class members' rights.

741.    Defendant's knowledge of the Defendant's Products' abilities and safety and health risk put them on notice that Defendant's Products were not as they advertised.

742.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages caused by the Products.

743.    Plaintiffs and Missouri Class members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, declaratory relief, and any other appropriate relief,

## COUNT 35

## VIOLATIONS OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, Mont. Code Ann. §§ 30-14-101, *et seq.* (On behalf of the Montana Subclass)

744. The Montana Plaintiffs identified above, individually and on behalf of the Montana Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

745. Defendant is a "person" as defined by Mont. Code Ann. § 30-14-102(6).

746. The Montana Plaintiffs and Montana Subclass members are "consumers" as defined by Mont. Code Ann. § 30-14-102(1).

747. Defendant advertised, offered, or sold goods or services in Montana and engaged in trade or commerce directly or indirectly affecting the people of Montana, as defined by Mont. Code Ann. § 30-14-102(8).

748. Defendant engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation Mont. Code Ann. § 30-14-103, as described herein.

749. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

750. Defendant's acts described above are unfair and offend public policy; they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

751. As a direct and proximate result of Defendant's unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, the Montana Plaintiffs and Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

752.    The Montana Plaintiffs and Montana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $500, treble damages, restitution, attorneys' fees and costs, injunctive relief, and other relief that the Court deems appropriate.

## COUNT 36

## VIOLATIONS OF THE NEBRASKA CONSUMER PROTECTION ACT, Neb. Rev. Stat. §§ 59-1601, *et seq.* (On behalf of the Nebraska Subclass)

753.    The Nebraska Plaintiffs identified above, individually and on behalf of the Nebraska Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

754.    The Nebraska Plaintiffs and Nebraska Subclass members are each a "person" as defined by Neb. Rev. Stat. § 59-1601(1).

755.    Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska, as defined by Neb. Rev. Stat. § 59-1601.

756.    Defendant engaged in unfair and deceptive acts and practices in conducting trade and commerce, in violation of Neb. Rev. Stat. § 59-1602, as described herein.

757.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

758.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages,

including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

759.    Defendant's unfair and deceptive acts and practices complained of herein affected the public interest, including the large percentage of Nebraskans who have purchased and/or used Defendant's Products.

760.    Plaintiffs and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, the greater of either (1) actual damages or (2) $1,000, civil penalties, and reasonable attorneys' fees and costs.

## COUNT 37

### VIOLATIONS OF THE NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT, Neb. Rev. Stat. §§ 87-301, *et seq.* (On behalf of the Nebraska Subclass)

761.    The Nebraska Plaintiffs identified above, individually and on behalf of the Nebraska Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

762.    The Nebraska Plaintiffs and Nebraska Subclass members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

763.    Defendant advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

764.    Defendant engaged in deceptive trade practices in the course of its business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5),(8) and (10) by representing that goods and services have characteristics, uses, benefits, or qualities that they do not have; representing that goods and services are of a particular standard, quality, or grade if they are of another; and advertising its

goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive.

765.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

766.    Defendant intended to mislead Plaintiffs and Nebraska Subclass members and induce them to rely on its misrepresentations and omissions.

767.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

768.    Defendant's deceptive trade practices complained of herein affected consumers at large, including the large percentage of Nebraskans who purchased and/or used Defendant's Products.

769.    The Nebraska Plaintiffs and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, civil penalties, and attorneys' fees and costs.

**COUNT 38**

**VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT,**
**Nev. Rev. Stat. §§ 598.0903, *et seq*.**
**(On behalf of the Nevada Subclass)**

770.    The Nevada Plaintiffs identified above, individually and on behalf of the Nevada Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

771.    Defendant advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

772.    Defendant engaged in deceptive trade practices in the course of its business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923 by knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5); representing that goods or services for sale are of a particular standard, quality, or grade when Defendant knew or should have known that they are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7); advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9); failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(2); and violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(3).

773.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

774.    Had Defendant disclosed to Plaintiffs and Nevada Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing

their potential risks. Plaintiffs and the Nevada Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

775.    Defendant acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Nevada Subclass members' rights.

776.    As a direct and proximate result of Defendant's deceptive acts and practices, the Nevada Plaintiffs and Nevada Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

777.    The Nevada Plaintiffs and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

## COUNT 39

## VIOLATIONS OF NEW HAMPSHIRE CONSUMER PROTECTION ACT, N.H. Rev. Stat. Ann. §§ 358-A, *et seq.* (On behalf of the New Hampshire Subclass)

778.    The New Hampshire Plaintiffs identified above, individually and on behalf of the New Hampshire Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

779.    Defendant is a "person" under the New Hampshire Consumer Protection statute.

780.    Defendant advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H. Rev. Stat. Ann. § 358-A:1.

781.    Defendant engaged in unfair and deceptive acts or practices in the ordinary conduct of its trade or business, in violation of N.H. Rev. Stat. Ann. § 358-A:2 by making misrepresentations and false statements concerning the characteristics, ingredients, uses, or benefits of Defendant's Products; representing that its goods or services have characteristics, uses, or benefits that they do not have in violation of N.H. Rev. Stat. Ann. § 358-A:2.V; representing that its goods or services are of a particular standard or quality if they are of another in violation of N.H. Rev. Stat. Ann.. § 358-A:2.VII; and advertising its goods or services with intent not to sell them as advertised in violation of N.H. Rev. Stat. Ann. § 358-A:2.IX.

782.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

783.    Defendant acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded Plaintiffs and New Hampshire Subclass members' rights. Defendant's acts and practices went beyond the realm of strictly private transactions.

784.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

785.    The New Hampshire Plaintiffs and New Hampshire Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, equitable relief (including injunctive relief), restitution, civil penalties, and attorneys' fees and costs.

## COUNT 40

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT,
### N.J. Stat. Ann. §§ 56:8-1, *et seq.*
### (On behalf of the New Jersey Subclass)

786.    The New Jersey Plaintiffs identified above, individually and on behalf of the New Jersey Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

787.    Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

788.    Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

789.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

790.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

791.    As a direct and proximate result of Defendant's deceptive acts and practices, the New Jersey Plaintiffs and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

792.    The New Jersey Plaintiffs and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**COUNT 41**

**VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT,**
**N.M. Stat. Ann. §§ 57-12-2, *et seq*.**
**(On behalf of the New Mexico Subclass)**

793.    The New Mexico Plaintiffs identified above, individually and on behalf of the New

Mexico Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated

herein.

794.    Defendant is a "person" as meant by N.M. Stat. Ann. § 57-12-2.

795.    Defendant is engaged in "trade" and "commerce" as meant by N.M. Stat. Ann.

§ 57-12-2(C) when engaging in the conduct alleged.

796.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, *et seq.*,

prohibits both unfair or deceptive trade practices and unconscionable trade practices in the

conduct of any trade or commerce.

797.    Defendant engaged in unconscionable, unfair, and deceptive acts and practices in

connection with the sale of goods or services in the regular course of its trade or commerce,

including the following: knowingly representing that its goods and services have characteristics,

benefits, or qualities that they do not have, in violation of N.M. Stat. Ann. § 57-12-2(D)(5);

knowingly representing that its goods and services are of a particular standard or quality when

they are of another in violation of N.M. Stat. Ann. § 57-12-2(D)(7); knowingly using

exaggeration, innuendo, or ambiguity as to a material fact or failing to state a material fact where

doing so deceives or tends to deceive in violation of N.M. Stat. Ann. § 57-12-2(D)(14); taking

advantage of the lack of knowledge, experience, or capacity of its consumers to a grossly unfair

degree to Plaintiffs' and the New Mexico Subclass' detriment in violation of N.M. Stat. Ann. §

57-2-12(E)(1); and performing these acts and practices in a way that results in a gross disparity

between the value received by Plaintiffs and the New Mexico Subclass and the price paid, to their detriment, in violation of N.M. Stat. Ann. § 57-2-12(E)(2).

798.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

799.    As a direct and proximate result of Defendant's deceptive acts and practices, the New Mexico Plaintiffs and New Mexico Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

800.    The New Mexico Plaintiffs and New Mexico Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages or statutory damages of $100 (whichever is greater), treble damages or statutory damages of $300 (whichever is greater), and reasonable attorneys' fees and costs.

## COUNT 42

### VIOLATIONS OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT
### New York Gen. Bus. Law § 349, *et seq.*
### (On behalf of the New York Subclass)

808.    The New York Plaintiffs identified above, individually and on behalf of the New York Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

809.    The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

810.    Defendant's deceptive acts and practices include:

   a.   Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in

health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.   Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

811.   Defendant violated N.Y. Gen. Bus. Law. § 349's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products.

812.    As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically its failure to inform customers of the health and safety risks inherent in Defendant's Products, violated N.Y. Gen. Bus. Law § 349, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

813.   Defendant violated N.Y. Gen. Bus. Law § 349's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Defendant's Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair damage, hair loss, excessive shedding, and/or scalp irritation) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

814.   Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiffs and New York Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

815.   Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, New York Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

816.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

817.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and New York Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

818.    Defendant recklessly disregarded Plaintiffs and New York Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

819.    On February 7, 2020, Plaintiffs sent a demand letter to Defendant which outlined how its conduct in misrepresenting the contents of the Products constituted a breach of New York Gen. Bus. Law § 349.

820.    Plaintiffs and the New York State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New York Deceptive Acts and Practices Act.

## COUNT 43

## VIOLATIONS OF THE NEW YORK FALSE ADVERTISING LAWS
### New York Gen. Bus. Law § 350, *et seq.*
### (On Behalf of The New York Subclass)

821.    The New York Plaintiffs identified above, individually and on behalf of the New York Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

822.    The New York False Advertising Act makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in

a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …."

823.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of Defendant's Products. Defendant failed to instigate a public information campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

824.    Defendant continued to misrepresent to consumers that Defendant's Products were capable of certain benefits without disclosing health and safety risks. Had Defendant disclosed those issues, rather than falsely advertising Defendant's Products' abilities, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

825.    In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of N.Y. Gen. Bus. Law § 350, et seq. Plaintiffs and other New York Subclass Members based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant, attributable to Products sold in those false and misleading advertisements, amount to hundreds of millions of dollars. Plaintiffs and New York Subclass Members were injured in fact and lost money and property as a result.

826.    The misrepresentations and non-disclosures by Defendant, of the material facts described and detailed herein, constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, et seq.

827.    As a result of Defendant's wrongful conduct, Plaintiffs and the New York Subclass Members lost money. Plaintiffs and the New York Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

828.    Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiffs and the New York Subclass members seek injunctive relief, as well as monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York Subclass member.

## COUNT 44

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### N.C. Gen. Stat. §§ 75-1.1, *et seq.*
### (On behalf of the North Carolina Subclass)

829.    The North Carolina Plaintiffs identified above, individually and on behalf of the North Carolina Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

830.    At all times relevant herein, Defendant engaged in commerce in the State of North Carolina.

831.    The conduct of Defendant, as set forth herein, is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

832.    Defendant's false, misleading and deceptive statements and representations of fact were and are directed to consumers.

833.    Defendant's false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

834.    Defendant's false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

835.    Had Defendant disclosed to Plaintiffs and North Carolina Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the North Carolina Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

836.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and North Carolina Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

837.    The above-described conduct violated N.C. Gen. Stat. § 75-1.19(a), including:

a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c.    Advertising goods or services with intent not to sell them as advertised.

838.    The North Carolina Plaintiffs and the North Carolina Subclass the Class suffered actual injury as a result of Defendant's unfair actions. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

839.    Defendant's actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

840.    The North Carolina Plaintiffs and each member of the North Carolina Subclass have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

## COUNT 45

## VIOLATIONS OF NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING ACT, N.D. Cent. Code §§ 51-15-01, et seq.
### (On behalf of the North Dakota Subclass)

841.    The North Dakota Plaintiffs identified above, individually and on behalf of the North Dakota Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

842.    Defendant, each Plaintiff, and each member of the North Dakota Subclass is a "person," as defined by N.D. Cent. Code § 51-15-01(4).

843.    Defendant sells and advertises "merchandise," as defined by N.D. Cent. Code § 51-15-01(3) and (5).

844.    DevaCurl advertised, offered, or sold goods or services in North Dakota and engaged in trade or commerce directly or indirectly affecting the people of North Dakota.

845.    Defendant engaged in deceptive, false, fraudulent, misrepresentative, unconscionable, and substantially injurious acts and practices in connection with the sale and advertisement of merchandise, in violation of N.D. Cent. Code § 51-15-01, including:

      a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

      b.    Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

      c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

      d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

846.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the Products' properties and abilities and the known health and safety risks.

847.    DevaCurls's above-described acts and practices caused substantial injury to Plaintiffs and North Dakota Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

848.    Defendant intended to mislead Plaintiffs and North Dakota Subclass members and induce them to rely on its misrepresentations and omissions.

849.    Defendant acted intentionally, knowingly, and maliciously to violate North Dakota's Unlawful Sales or Advertising Law, and recklessly disregarded Plaintiffs' and North Dakota Subclass members' rights. The numerous prior FDA complaints of hair loss and scalp irritation, the hundreds of complaints posted on social media sites like Facebook, and the numerous postings of social media influencers put DevaCurl on notice that its Products' properties and abilities and the known health and safety risks were not accurately represented.

850.    Had DevaCurl disclosed to Plaintiffs and the North Dakota Subclass members the true nature and character of its Products, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

851.    As a direct and proximate result of DevaCurl's unlawful acts and practices, Plaintiffs and North Dakota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

852.    Plaintiffs and North Dakota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, damages, restitution, treble damages, civil penalties, and attorneys' fees, costs, and disbursements.

## COUNT 46

## VIOLATIONS OF THE OHIO ONSUMER SALES PRACTICES ACT,
### Ohio Rev. Code Ann. §§ 1345.01, *et seq*.
### (On behalf of the Ohio Subclass)

853.    The Ohio Plaintiffs identified above, individually and on behalf of the Ohio Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

854.    The Ohio Plaintiffs and the Ohio Subclass members are "persons," as defined by Ohio Rev. Code Ann. § 1345.01(B).

855.    Defendant is a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code Ann. § 1345.01(A) and (C).

856.    Defendant advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

857.    Defendant engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. § 1345.02 by representing that its goods, services, and intangibles had performance characteristics, uses, and benefits that it did not have, in violation of Ohio Rev. Code Ann. § 1345.02(B)(1); and representing that its goods, services, and intangibles were of a particular standard or quality when they were not, in violation of Ohio Rev. Code Ann. § 1345(B)(2).

858.    Defendant engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. § 1345.03 by knowingly taking advantage of the inability of Plaintiffs and the Ohio Subclass to reasonably protect their interest because of their ignorance of the issues discussed herein (Ohio Rev. Code Ann. § 1345.03(B)(1)); and requiring the Ohio Plaintiffs and the Ohio Subclass to enter into a consumer transaction on terms that Defendant knew were substantially one-sided in favor of Defendant (Ohio Rev. Code Ann. § 1345.03(B)(5)).

859.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

860.    Defendant's unfair, deceptive, and unconscionable acts and practices complained of herein affected the public interest, including the thousands of Ohio residents who purchased and/or used Defendant's Products.

861.    As a direct and proximate result of Defendant's deceptive acts and practices, the Ohio Plaintiffs and the Ohio Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

862.    The Ohio Plaintiffs and the Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

## COUNT 47

## VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT, Ohio Rev. Code Ann. §§ 4165.01, *et seq.* (On behalf of the Ohio Subclass)

863.    The Ohio Plaintiffs identified above, individually and on behalf of the Ohio Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

864.    Defendant, Plaintiffs, and Ohio Subclass members are a "person," as defined by Ohio Rev. Code Ann. § 4165.01(D).

865.    Defendant advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

866.    Defendant engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code Ann. § 4165.02 by representing that its goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code Ann. § 4165.02(A)(7); representing that its goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code Ann. §

4165.02(A)(9); and advertising its goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code Ann. § 4165.02(A)(11).

867.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

868.    As a direct and proximate result of Defendant's deceptive acts and practices, the Ohio Plaintiffs and Ohio Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

869.    The Ohio Plaintiffs and Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

## COUNT 48

### VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT
### Okla. Stat. tit. 15, §§ 751, *et seq.*
### (On behalf of the Oklahoma Subclass)

870.    The Oklahoma Plaintiffs identified above, individually and on behalf of the Oklahoma Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

871.    Defendant is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

872.    Defendant's advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

873.    Defendant, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following: making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5); representing, knowingly or with reason to know, that the subjects of their consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7); advertising, knowingly or with reason to know, the subjects of their consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753 (8); committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

874.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

875.    Defendant intended to mislead Plaintiffs and Oklahoma class members and induce them to rely on their misrepresentations and omissions.

876.    Had Defendant disclosed to Plaintiffs and Oklahoma Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing,

hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the Oklahoma Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

877.    The above unlawful practices and acts by Defendant were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiffs and Oklahoma class members.

878.    Defendant acted intentionally, knowingly, and maliciously to violate Oklahoma's Consumer Protection Act, and recklessly disregarded Plaintiffs and Oklahoma class members' rights. Defendant's knowledge of Defendant's Products' abilities and health and safety risks put them on notice that Defendant's Products were not as they advertised.

879.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Oklahoma Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages they caused.

880.    Plaintiffs and Oklahoma Class members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, declaratory relief, and attorneys' fees and costs.

**COUNT 49**

**VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT,**
**Or. Rev. Stat. §§ 646.608, *et seq.***
**(On behalf of the Oregon Subclass)**

881.     The Oregon Plaintiffs identified above, individually and on behalf of the Oregon

Subclass, incorporate by reference paragraphs 1-389 of this Complaint as if fully stated herein.

882.     Defendant is a "person," as defined by Or. Rev. Stat. § 646.605(4).

883.     Defendant engaged in the sale of "goods and services," as defined by Or. Rev. Stat.

§ 646.605(6)(a).

884.     Defendant sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

885.     Defendant advertised, offered, or sold goods or services in Oregon and engaged in

trade or commerce directly or indirectly affecting the people of Oregon.

886.     Defendant engaged in unlawful practices in the course of its business and

occupation, in violation of Or. Rev. Stat. § 646.608, including, inter alia, the following unlawful

practices: representing that its goods and services have approval, characteristics, uses, benefits,

and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e); representing

that its goods and services are of a particular standard or quality if they are of another, in violation

of Or. Rev. Stat. § 646.608(1)(g); advertising its goods or services with intent not to provide them

as advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and concurrent with tender or delivery

of its goods and services, failing to disclose any known material defect, in violation of Or. Rev.

Stat. § 646.608(1)(t).

887.     Defendant's business practices of misrepresenting the Products, concealing the

Products' defects, concealing the health and safety risk with use of the Products, and also

concealing and misrepresenting the true nature of the Products is an unconscionable commercial

practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the Oregon Unlawful Trade Practices Act.

888.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

889.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Oregon Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

890.    Plaintiffs and Oklahoma Class members seek all monetary and non-monetary relief allowed by law, including actual damages or two hundred dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

## COUNT 50

## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,
### 73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq.*
### (On behalf of the Pennsylvania Subclass)

891.    The Pennsylvania Plaintiff identified above, individually and on behalf of the Pennsylvania Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

892.    The Pennsylvania Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Stat. Ann. § 201-3.

893.    Defendant's deceptive acts and practices include:

a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in

health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.   Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

894.   Defendant violated 73 Pa. Stat. Ann. § 201-3's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products.

895.   As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically its failure to inform customers of the health and safety risks inherent in Defendant's Products, violated 73 Pa. Stat. Ann. § 201-3, common law, and other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

896.    Defendant violated 73 Pa. Stat. Ann. § 201-3's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair damage, hair loss, excessive shedding, and/or scalp irritation) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

897.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiff and Pennsylvania Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

898.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, Pennsylvania Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

899.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

900.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Pennsylvania Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

901.    Defendant recklessly disregarded Plaintiff and Pennsylvania Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

902.    Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiff and the Pennsylvania Subclass Members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive and/or treble damages, and any other just and proper relief available under the Pennsylvania Unfair Trade Practices Act.

## COUNT 51

## VIOLATIONS OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT, R.I. Gen. Laws §§ 6-13.1, *et seq.*
### (On behalf of the Rhode Island Subclass)

903.    The Rhode Island Plaintiff identified above, individually and on behalf of the Rhode Island Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

904.    The Rhode Island Plaintiffs and Rhode Island Subclass members are each a "person," as defined by R.I. Gen. Laws § 6-13.1-1(3).

905.    The Rhode Island Plaintiffs and Rhode Island Subclass members purchased goods and services for personal, family, or household purposes.

906.    Defendant advertised, offered, or sold goods or services in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. Gen. Laws § 6-13.1-1(5).

907.    Defendant engaged in unfair and deceptive acts and practices, in violation of R.I. Gen. Laws § 6-13.1-2 by representing that its goods and services have characteristics, uses, and benefits that they do not have (R.I. Gen. Laws § 6-13.1-52(6)(v)); representing that its goods and services are of a particular standard or quality when they are of another (R.I. Gen. Laws § 6-13.1-52(6)(vii)); advertising goods or services with intent not to sell them as advertised (R.I. Gen. Laws § 6-13.1-52(6)(ix)); engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. Gen. Laws § 6-13.1-52(6)(xii)); engaging in any act or practice that is unfair or deceptive to the consumer (R.I. Gen. Laws § 6-13.1-52(6)(xiii)); and using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. Gen. Laws § 6-13.1-52(6)(xiv)).

908.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

909.    As a direct and proximate result of Defendant's deceptive acts and practices, the Rhode Island Plaintiffs and Rhode Island Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

910.    The Rhode Island Plaintiffs and Rhode Island Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $200

per Subclass Member (whichever is greater), punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs.

## COUNT 52

### VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT, S.C. Code Ann. §§ 39-5-10, *et seq.*
**(On behalf of the South Carolina Subclass)**

911.    The South Carolina Plaintiff identified above, individually and on behalf of the South Carolina Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

912.    Defendant is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

913.    South Carolina's Unfair Trade Practices Act (SCUTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

914.    Defendant advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

915.    Defendant's business practices of misrepresenting Defendant's Products, concealing Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products, is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the SCUPTA.

916.    Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

917.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

918.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

919.    Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

920.    Had Defendant disclosed to Plaintiffs and South Carolina Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the South Carolina Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

921.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and South Carolina Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

922.    The South Carolina Plaintiffs and South Carolina Subclass seek all monetary and non-monetary relief allowed by law, including actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

**COUNT 53**

**VIOLATIONS OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND
CONSUMER PROTECTION ACT,
S.D. Codified Laws §§ 37-24-1, et seq.
(On behalf of the South Dakota Subclass)**

923.    The South Dakota Plaintiff identified above, individually and on behalf of the South Dakota Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

924.    DevaCurl is a "person," as defined by S.D. Codified Laws § 37-24-1(8).

925.    DevaCurl advertises and sells "merchandise," as defined by S.D. Codified Laws § 37-24-1(6), (7), & (13).

926.    DevaCurl advertised, offered, or sold goods or services in South Dakota and engaged in trade or commerce directly or indirectly affecting the people of South Dakota, as defined by S.D. Codified Laws § 37-24-1(6), (7), & (13).

927.    DevaCurl knowingly engaged in deceptive acts or practices, misrepresentation, concealment, suppression, or omission of material facts in connection with the sale and advertisement of goods or services, in violation of S.D. Codified Laws § 37-24-6, including:

  a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

  b.    Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

928.    DevaCurl intended to mislead Plaintiffs and South Dakota Subclass members and induce them to rely on its misrepresentations and omissions.

929.    DevaCurl's representations and omissions were material because they were likely to deceive reasonable consumers about the Products' properties and abilities and the known health and safety risks.

930.    DevaCurl had a duty to disclose the above facts because such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the South Dakota Subclass. DevaCurl's duty to disclose also arose from its:

a.    Possession of exclusive knowledge regarding the true nature and character of its Products, and the health risks associated with the use of its Products;

b.    Active concealment of the true nature and character of its Products, and the health risks associated with the use of its Products; and/or

c.    Incomplete representations about true nature and character of its Products, the health risks associated with the use of its Products, and prior complaints and reports of adverse effects when using its Products, while purposefully withholding material facts from Plaintiffs and the South Dakota Subclass that contradicted these representations.

931.    Had DevaCurl disclosed to Plaintiffs and the South Dakota Subclass members the true nature and character of its Products, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

932.    In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of South Dakota law. Plaintiffs and other Delaware Subclass Members based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant, attributable to Products sold in those false and misleading advertisements, amount to millions of dollars.

933.    Plaintiffs and the South Dakota Subclass members acted reasonably in relying on DevaCurl's misrepresentations and omissions, the truth of which they could not have discovered.

934.    As a direct and proximate result of DevaCurl's unlawful acts and practices, Plaintiffs and South Dakota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

935.    DevaCurl's violations present a continuing risk to Plaintiffs and South Dakota Subclass members as well as to the general public.

936.    Plaintiffs and South Dakota Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

**COUNT 54**

**VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT OF 1977**
**Tenn. Code Ann. § 47-18-101, *et seq.***
**(On behalf of the Tennessee Subclass)**

937.    The Tennessee Plaintiff identified above, individually and on behalf of the Tennessee Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

938.    The Tennessee Plaintiffs and Tennessee Subclass members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

939.    Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

940.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

941.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products have characteristics, ingredients, uses, or benefits that they do not have, concealing Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the Tennessee CPA.

942.    Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

943.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

944.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

945.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Tennessee Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

946.    Had Defendant disclosed to Plaintiffs and Tennessee Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

947.    As a result, Plaintiffs and Tennessee Subclass members have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. Plaintiffs

and Tennessee Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

## COUNT 55

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT
### Texas Bus. & Com. Code Ann. §§ 17.41, *et seq.*
### (On behalf of the Texas Subclass)

948.    The Texas Plaintiff identified above, individually and on behalf of the Texas Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

949.    Defendant is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

950.    Plaintiffs and the Texas Class members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

951.    Defendant advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

952.    Defendant engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including: representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

953.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

954.    Had Defendant disclosed to Plaintiffs and California Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved

with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

955.    Defendant engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendant engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Defendant's Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair loss, excessive shedding, and scalp irritation).

956.    Defendant took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from Defendant's conduct is glaringly noticeable, flagrant, complete, and unmitigated.

957.    Defendant recklessly disregarded Plaintiffs and Texas Class members' rights.

958.    Defendant's knowledge of Defendant's Products' abilities and health and safety risks put them on notice that Defendant's Products were not as they advertised.

959.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Texas Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating damages they caused.

960.    Defendant's violations present a continuing risk to Plaintiffs and Texas Class members as well as to the general public.

961.    Defendant received or are contemporaneously receiving notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning its wrongful conduct as alleged herein by Plaintiffs and Texas Class members.

962.    However, sending pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 is an exercise in futility for Plaintiffs, as Defendant have already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit, and have yet to offer Class members remedy in accordance with similar consumer protection statute.

963.    Plaintiffs and Texas Subclass members seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive and declaratory relief, and any other relief which the court deems proper.

**COUNT 56**

**VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT,**
**Utah Code §§ 13-11-1, *et seq.***
**(On behalf of the Utah Subclass)**

964.    The Utah Plaintiff identified above, individually and on behalf of the Utah Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

965.    Defendant is a "person," as defined by Utah Code Ann. § 13-11-1(5).

966.    Defendant is a "supplier," as defined by Utah Code Ann. § 13-11-1(6), because it regularly solicits, engages in, or enforces "consumer transactions," as defined by Utah Code Ann. § 13-11-1(2).

967.    Defendant engaged in deceptive and unconscionable acts and practices in connection with consumer transactions, in violation of Utah Code Ann. § 13-11-4 and § 13-11-5, by misrepresenting Defendant's Products, concealing Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products.

968.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

969.    Defendant intentionally or knowingly engaged in deceptive acts or practices, violating Utah Code Ann. § 13-11-4(2) by: indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; and/or indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

970.    Defendant engaged in unconscionable acts and practices that were oppressive and led to unfair surprise, as shown in the setting, purpose, and effect of those acts and practices.

971.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Utah Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

972.    Had Defendant disclosed to Plaintiffs and Utah Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the Utah Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

973.    The Utah Plaintiffs and the Utah Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages of $2,000 per violation, amounts necessary to avoid unjust enrichment, under Utah Code Ann. §§ 13-11-19, *et seq.*, injunctive relief, and reasonable attorneys' fees and costs.

**COUNT 57**

**VERMONT CONSUMER FRAUD ACT,**
**Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.***
**(On behalf of the Vermont Subclass)**

974.    The Vermont Plaintiff identified above, individually and on behalf of the Vermont

Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

975.    Plaintiff and Vermont Subclass members are "consumers," as defined by Vt. Stat.

Ann. tit. 9, § 2451a(a).

976.    DevaCurl's conduct as alleged herein related to "goods" or "services" for personal,

family, or household purposes, as defined by Vt. Stat. Ann. tit. 9, § 2451a(b).

977.    DevaCurl is a "seller," as defined by Vt. Stat. Ann. tit. 9, § 2451a(c).

978.    DevaCurl advertised, offered, or sold goods or services in Vermont and engaged

in trade or commerce directly or indirectly affecting the people of Vermont.

979.    DevaCurl engaged in unfair and deceptive acts or practices, in violation of Vt. Stat.

tit. 9, § 2453(a), including:

> a.    Knowingly designing, developing, manufacturing, advertising, and selling
> Defendant's Products with false health claims and significant defects that result in
> health and safety risks when used so that consumers did not receive the benefit of
> their bargain;
>
> b.    Marketing and selling Defendant's Products that relied upon false health claims,
> while at the same time exposing consumers to health and safety risks solely to
> increase profits;

     c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

     d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

980.    DevaCurl intended to mislead Plaintiff and Vermont Subclass members and to induce them to rely on its misrepresentations and omissions.

981.    DevaCurl's representations and omissions were material because they were likely to deceive reasonable consumers about the Products' properties and abilities and the known health and safety risks.

982.    Under the circumstances, consumers had a reasonable interpretation of DevaCurl's representations and omissions.

983.    DevaCurl had a duty to disclose the above facts due to the circumstances of this case, and because such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Vermont Subclass. DevaCurl's duty to disclose also arose from its:

     a.    Possession of exclusive knowledge regarding the true nature and character of its Products, and the health risks associated with the use of its Products;

     b.    Active concealment of the true nature and character of its Products, and the health risks associated with the use of its Products; and/or

     c.    Incomplete representations about true nature and character of its Products, the health risks associated with the use of its Products, and prior complaints and reports of adverse effects when using its Products, while purposefully withholding

material facts from Plaintiffs and the Vermont Subclass that contradicted these representations.

984.    DevaCurl's acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

985.    The injury to consumers was and is substantial because it was nontrivial and non-speculative; and involved a concrete monetary injury and/or an unwarranted risk to the health and safety of Plaintiff and the Vermont Subclass members. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

986.    Consumers could not have reasonably avoided injury because DevaCurl's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the nature and properties of its Products and the known health risks associated with the use of its Products, DevaCurl created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

987.    DevaCurl's Products had no countervailing benefit to consumers or to competition.

988.    DevaCurl is presumed, as a matter of law under Vt. Stat. Ann. tit. 9, § 2457, to have intentionally violated the Vermont Consumer Protection Act because it failed to sell goods or services in the manner and of the nature advertised or offered.

989.    DevaCurl acted intentionally, knowingly, and maliciously to violate Vermont's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and Vermont Subclass members'

rights. The numerous prior FDA complaints of hair loss and scalp irritation, the hundreds of complaints posted on social media sites like Facebook, and the numerous postings of social media influencers put DevaCurl on notice that its Products' properties and abilities and the known health and safety risks were not accurately represented.

990.    Had DevaCurl disclosed to Plaintiffs and the Vermont Subclass members the true nature and character of its Products, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

991.    As a direct and proximate result of DevaCurl's unlawful acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

992.    DevaCurl's violations present a continuing risk to Plaintiffs and Vermont Subclass members as well as to the general public.

993.    Plaintiff and Vermont Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, restitution, actual damages, disgorgement of profits, treble damages, punitive/exemplary damages, and reasonable attorneys' fees and costs.

## COUNT 58

### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT,
**Va. Code Ann. §§ 59.1-196, *et seq*.**
**(On behalf of the Virginia Subclass)**

994.    The Virginia Plaintiff identified above, individually and on behalf of the Virginia Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

995.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

996.    Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.

997.    Defendant is a "supplier," as defined by Va. Code Ann. § 59.1-198.

998.    Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendant advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

999.    Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

1000.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

1001.   The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

1002.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

1003.   Had Defendant disclosed to Plaintiffs and Virginia Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved

with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

1004.   Defendant's violations present a continuing risk to Plaintiffs and Virginia Subclass members as well as to the general public.

1005.   The Virginia Plaintiffs and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT 59

## VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT,
### Wash. Rev. Code §§ 19.86.020, *et seq*.
### (On behalf of the Washington Subclass)

1006.   The Washington Plaintiff identified above, individually and on behalf of the Washington Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

1007.   Defendant is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

1008.  Defendant advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010 (2).

1009.  Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, by misrepresenting Defendant's Products, concealing Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products.

1010.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

1011.  As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Washington Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

1012.  Had Defendant disclosed to Plaintiffs and Washington Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing

their potential risks. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

1013.   Plaintiffs and Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT 60

## VIOLATIONS OF THE WEST VIRGINIA CONSUMER
## CREDIT AND PROTECTION ACT,
## W. Va. Code §§ 46A-6-101, *et seq*.
**(On behalf of the West Virginia Subclass)**

1014.   The West Virginia Plaintiff identified above, individually and on behalf of the West Virginia Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

1015.   Plaintiffs and West Virginia Subclass members are "consumers," as defined by W. Va. Code § 46A-6-102(2).

1016.   Defendant engaged in "consumer transactions," as defined by W. Va. Code § 46A-6-102(2).

1017.   Defendant advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

1018.   Defendant received notice pursuant to W. Va. Code § 46A-6-106(c) concerning its wrongful conduct as alleged herein by Plaintiffs and West Virginia Subclass members. Defendant engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, by misrepresenting Defendant's Products, concealing

Defendant's Products' defects, concealing the health and safety risks associated with use of Defendant's Products, and also concealing and misrepresenting the true nature of Defendant's Products.

1019.  Defendant's unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; advertising goods or services with intent not to sell them as advertised; engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any manner, statements and representations with regard to the sale of goods, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

1020.  Defendant's unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

1021.  Defendant's acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which

was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

1022.   The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

1023.   Defendant's business practices had no countervailing benefit to consumers or to competition.

1024.   Defendant's acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Defendant made representations or omissions of material facts that misled or were likely to mislead reasonable consumers.

1025.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and West Virginia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

1026.   Had Defendant disclosed to Plaintiffs and West Virginia Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced

from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

1027.   Defendant's violations present a continuing risk to the West Virginia Plaintiffs and West Virginia Subclass members as well as to the general public.

1028.   Plaintiffs and West Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a), restitution, injunctive and other equitable relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT 61

## VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT,
### Wis. Stat. §§ 100.18, *et seq.*
### (On behalf of the Wisconsin Subclass)

1029.   The Wisconsin Plaintiff identified above, individually and on behalf of the Wisconsin Subclass, incorporates by reference paragraphs 1-389 of this Complaint as if fully stated herein.

1030.   Defendant is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

1031.   The Wisconsin Plaintiffs and Wisconsin Subclass members are members of "the public," as defined by Wis. Stat. § 100.18(1).

1032.   With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendant to members of the public for sale, use, or distribution, Defendant made, published, circulated, placed before the public or caused (directly or indirectly)

to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

1033.  Defendant also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

1034.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

1035.  Defendant's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

1036.  As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Wisconsin Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage they caused.

1037.  Had Defendant disclosed to Plaintiffs and Wisconsin Subclass members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced

from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

1038.   Defendant had an ongoing duty to all Defendant customers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

1039.   The Wisconsin Plaintiffs and Wisconsin Subclass members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

**COUNT 62**

**VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT,**
**D.C. Code §§28-3904, *et. seq.***
**(On behalf of the District of Columbia Subclass)**

1040.   The District of Columbia Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the District of Columbia Subclass, repeats and alleges Paragraphs 1-389, as if fully alleged herein.

1041.   DevaCurl is a "person" as defined by D.C. Code § 28-3901(a)(1).

1042.   DevaCurl is a "merchant" as defined by D.C. Code § 28-3901(a)(3).

1043.   Plaintiff and District of Columbia Subclass members are "consumers" who purchased or received goods or services for personal, household, or family purposes, as defined by D.C. Code § 28-3901.

1044.   DevaCurl advertised, offered, or sold goods or services in District of Columbia and engaged in trade or commerce directly or indirectly affecting the people of District of Columbia.

1045. DevaCurl engaged in unfair, unlawful, and deceptive trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of D.C. Code § 28-3904, including:

a.   Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products;

d.   Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior;

e.   Representing that goods have characteristics that they do not have;

f.   Representing that goods are of a particular standard, quality, grade, style, or model, when they are of another;

g.   Misrepresenting a material fact that has a tendency to mislead;

h.   Failing to state a material fact where the failure is misleading;

i.   Advertising or offering goods without the intent to sell them as advertised or offered; and

j.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

1046.   DevaCurl intended to mislead Plaintiff and District of Columbia Subclass members and to induce them to rely on its misrepresentations and omissions.

1047.   DevaCurl's representations and omissions were material because they were likely to deceive reasonable consumers about the Products' properties and abilities and the known health and safety risks.

1048.   Under the circumstances, consumers had a reasonable interpretation of DevaCurl's representations and omissions.

1049.   DevaCurl had a duty to disclose the above facts due to the circumstances of this case, and because such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the District of Columbia Subclass. DevaCurl's duty to disclose also arose from its:

a.      Possession of exclusive knowledge regarding the true nature and character of its Products, and the health risks associated with the use of its Products;

b.      Active concealment of the true nature and character of its Products, and the health risks associated with the use of its Products; and/or

c.      Incomplete representations about true nature and character of its Products, the health risks associated with the use of its Products, and prior complaints and reports of adverse effects when using its Products, while purposefully withholding material facts from Plaintiffs and the District of Columbia Subclass that contradicted these representations.

1050.    The above unfair and deceptive practices and acts by Equifax were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and District of Columbia Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

1051.    DevaCurl acted intentionally, knowingly, and maliciously to violate the District of Columbia's Consumer Protection Procedures Act, and recklessly disregarded Plaintiff and District of Columbia Subclass members' rights. DevaCurl's knowledge of numerous complaints about the Products dating back to 2018 put it on notice of the defective nature of the Products.

1052.    As a direct and proximate result of DevaCurl's unfair, unlawful, and deceptive trade practices, Plaintiff and District of Columbia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

1053.    Plaintiff and District of Columbia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, attorneys' fees and costs, the greater of treble damages or $1500 per violation, and any other relief that the Court deems proper.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

b.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pled or as the Court may deem proper; and

h.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: March 6, 2020                    Respectfully submitted,

                                         */s/ Brittany Weiner*

                                        Gary E. Mason*
                                        David K. Lietz*
                                        **WHITFIELD BRYSON & MASON, LLP**
                                        5101 Wisconsin Avenue NW, Suite 305
                                        Washington, DC 20016
                                        Tel: 202-640-1168
                                        Fax: 202-429-2294
                                        gmason@wbmllp.com
                                        dlietz@wbmllp.com

                                        **KOZONIS & KLINGER, LTD.**
                                        Gary M. Klinger*
                                        227 W. Monroe Street, Suite 2100
                                        Chicago, Illinois 60630
                                        Phone: 312.283.3814
                                        Fax: 773.496.8617
                                        gklinger@kozonislaw.com

**IMBESI LAW GROUP P.C.**
Brittany Weiner, Esq.
1501 Broadway, Suite 1915
New York, New York 10036
Phone: 646.767.2271
Fax: 212.658.9177
brittany@lawicm.com

*pro hac vice to be filed*
Attorneys for Plaintiffs